In the Matter of Melinda Jane Hoffman.
People of the State of Illinois ex rel. Jack Rosen, Relator, and Rose Rosen, Petitioner-Appellant and Appellant, v. Gerald Hoffman and May Hoffman, Respondents-Appellees.

Gen. No. 49,296.

First District, First Division.

June 8, 1964.

Jacob N. Gross, of Chicago, for appellants.

Martin, Craig, Chester & Sonnenschein, of Chicago, for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Jack Rosen and Rose Rosen appeal from an order entered in the Family Court of Cook County restraining them from interfering with the care and custody of a child declared to be dependent, and from interfering with her supervision by the respondents or the court. The order was entered at the conclusion of a dependency petition filed by Jack Rosen, solely, under the Family Court Act (Ill Rev Stats c 23, § 2001 et seq.).* In his petition he stated that the minor child was in the care and custody of the Hoffmans who

---

* Jack and Rose Rosen were the parents of Mrs. Gerald Hoffman who died before the conclusion of adoption proceedings regarding the minor child. Gerald Hoffman completed the adoption alone. He subsequently remarried. He and his new spouse are the respondents.

---

* See Callaghan's Illinois Digest, same topic and section number.

437

neglected, failed and refused to properly care for her by reason whereof she became and was a dependent. He claimed that it was for the best interests of said child and the People of the State of Illinois that she be taken from her parents and placed under the guardianship of some suitable person to be appointed by the court.

The record indicates that the parties and their attorneys were highly antagonistic and the court exercised patience and restraint. Near the conclusion of the hearing, respondents requested that Jack Rosen and his counsel be ordered from the courtroom; that their assistance in the custody hearing was no longer necessary. The court suggested a plan for the child, and the respondents replying, stated that no matter what plan the court directed, respondents had every reason to believe that Rosen "will look over the shoulder of whoever is treating the child." Jack Rosen indicated that he had no interest in interfering with the administering of any medication or treatment that the court should direct for the child, but that if respondents did not comply with the orders of the court, and he learned of it, he would (again) bring it to the attention of the court. He was willing to leave the hearing, and before he did leave the courtroom the court stated that there would be an order enjoining and restraining him from interfering with the court's plan. The court then declared the child a dependent and placed her in the custody of respondents on condition that she receive psychiatric care. The court further directed that the instant order be drafted. The order prepared and entered reads as follows:

"This matter coming on to be heard on the petition heretofore filed in this cause, and it appearing to the court that all the parties herein had due notice of the pendency of this cause, as re-

438

quired by law, and that the court has jurisdiction of the subject matter and of the parties hereto:

"The court now here having made a finding of dependency and having entered an order of disposition herein, and it appearing to the court that the entry of a protective order is required:

"IT IS ORDERED, ADJUDGED AND DE-CREED:

"That the petitioner, Jack Rosen, and his wife, Rose Rosen, their agents and attorneys and all persons acting in concert with them, be and each of them hereby is enjoined and restricted from interfering in any manner with the care and custody of the child . . . or with her supervision by the respondents or this court."

Within thirty days of the entry of this order, Jack Rosen, a member of the Bar, on behalf of himself and his wife Rose, moved to vacate said order. As grounds therefor he alleged that Rose Rosen was not a party to the action, was not served with process, never submitted to the jurisdiction of the court, nor was she ever present during any of the proceedings. He further charged that the order was invalid and illegal as to him because there was no evidence or hearing had in his presence with regard to the restraining order. This motion was denied and the appeal followed.

The Family Court Act, ch 23, sec 2009.1 contains the following provision:

"Order of protection—Issuance—Terms and requirements. In any case involving a child within the jurisdiction of the court, the court upon notice and after hearing shall have power to make an 'order of protection' in assistance of or as a condi-

439

tion of any other order authorized by this Act, setting forth conditions of behavior to be observed for a specified time by a person who is before the court pursuant to service of process or voluntary appearance and is a parent of the child, the guardian of the child, the person having custody of the child, or the spouse of such parent, guardian or person having custody of the child. Such order may govern the behavior of one or more of such persons as circumstances may require."

The Rosens contend that this section could not be applied under the facts and circumstances in this case and that the order was not in accordance therewith. Respondents, admitting this, take the position that the court did not apply this section of the Act but entered the order in the exercise of the court's inherent ancillary jurisdiction to enforce and protect its judgments and orders. Respondents further contend that the order is supported by evidence and the court had jurisdiction to enter it against Rose Rosen.

From the recitals in the order, we believe the court intended to apply this section of the Act and to enter an "order of protection." Referring to it as a "protective order" is synonymous with a reference to the term "order of protection" regardless of respondents' statement to the contrary.

Respondents argued that Jack Rosen made no timely objection to the entry of the order but, in fact, acquiesced to it at the time he left the courtroom. The facts do not support such inference. But if the order was entered without jurisdiction it was void and he could object to it at any time. He did make a motion within thirty days to set the order aside. It is the contention of the respondents that a court has authority to enter such injunctions as are necessary to protect and enforce its judgments and awards. Any interference with the custody or super-

vision of a child within the jurisdiction of the Family Court, they say, where the persons interfering have knowledge of the circumstances, is a punishable contempt. This argument begs the question. A court may have authority but it must be exercised in accordance with due process of law. Where the court has jurisdiction of the subject matter it must have jurisdiction of the persons. Due process requires that there be proper notice to the person of the charges made or the matters he is to answer and the court must grant him a proper hearing. A court cannot justify the entry of a restraining order without proper allegations, contentions or proof to warrant it. Here, we have no petition, motion or hearing indicating the basis for the order against both Rosens. They were given no opportunity to defend because there were no formal charges. Even a court of Chancery cannot anticipate that its judgments or decrees will be violated. On the contrary, it assumes that they will be respected. There were no emergent circumstances to enjoin; there was no evidence of any threatened or probable interference with the court's order. Rose Rosen was never before the court and it had no jurisdiction over her under any circumstances.

■ The constitutional guaranty of due process of law in its procedural aspect, "requires that every man shall have the protection of his day in court and the benefit of the general law, a law which hears before it condemns, which proceeds not arbitrarily or capriciously but upon inquiry, and renders judgment only after trial, so that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society." Durkin v. Hey, 376 Ill 292, 300, 33 NE2d 463 (1941); see also Barnett v. County of Cook, 373 Ill 516, 519, 26 NE2d 862 (1940); Griffin v. County of Cook, 369 Ill 380, 386, 16 NE2d 906 (1938); Danoff v. Larson,

441

368 Ill 519, 523, 15 NE2d 290 (1938); 11 ILP Constitutional Law, sec 414.

Even though the court had the best interests of the minor child in mind, it had no basis, as a matter of principle or law, for the entry of this order. The order of the trial court is reversed.

Reversed.

MURPHY, P. J. and BURMAN, J., concur.