*In re* MARRIAGE OF SUSAN ANN ALLISON, Petitioner-Appellee, and CHARLES F. PETER ALLISON, Respondent-Appellant.

Fifth District   No. 5—83—0405.

Opinion filed July 19, 1984.

Charles F. Peter Allison, of Centralia, for appellant, *pro se.*

No brief filed for appellee.

JUSTICE JONES delivered the opinion of the court:

The respondent, Charles F. Peter Allison, appeals from a judgment granting dissolution of marriage and related relief entered by the circuit court of Lawrence County. From the time of the filing of the petition for dissolution to the time of filing of his appellant's brief, the respondent has been in the custody of the Illinois Department of Corrections as a convicted felon and incarcerated in the penitentiary at Centralia. On appeal respondent contends (1) he was denied his right to procedural due process when he was not allowed to appear in court during the dissolution proceedings, and (2) petitioner did not prove grounds for dissolution of the marriage.

Petitioner has failed to file a brief in this court. We find, however, that the issues presented can be decided by this court without the aid of a brief by petitioner. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

On July 1, 1982, petitioner filed a petition for dissolution of marriage which alleged that respondent was an inmate of the Centralia Correctional Center. The alleged grounds for dissolution were that respondent had been guilty of extreme and repeated mental cruelty toward the petitioner. The petition alleged that the parties had not acquired any marital property during the marriage, but that the

petitioner had acquired both prior to and during the marriage certain nonmarital property which should be assigned to her. The petition contained no list or description of such property. It concluded with a prayer for dissolution of the marriage, for custody of a minor child of the parties, for maintenance, child support and attorney fees and for assignment of petitioner's nonmarital property.

On July 19, 1982, respondent filed a petition for a writ of *habeas corpus ad testificandum*. On July 27, 1982, respondent filed a motion to proceed *in forma pauperis*, a motion for appointment of counsel, a motion for discovery and an answer to the petition.

In his answer, respondent denied that he had inflicted any extreme and repeated mental cruelty and affirmatively alleged that the parties had acquired marital property during the marriage. Respondent's answer also asked that custody of the minor child be awarded to him. Petitioner filed a "Response to Answer" in which she denied that the parties had acquired any marital property during the marriage, but asserted that "if Respondent has knowledge of any property acquired during the marriage of the parties, and considered by Respondent as marital property, that Petitioner should have your [sic] proportionate part or share of said marital property." On July 30, 1982, the court granted the motion to proceed *in forma pauperis* and the motion for discovery but denied the motion for appointment of counsel.

On August 27, 1982, petitioner filed and served 18 written interrogatories upon the respondent. Interrogatories 13 through 15 were:

"13. Do you claim you and petitioner own marital property? If your answer is in the affirmative state what property you consider as marital property.

14. Do you claim any of the property in any of the proceedings as non-marital property.

15. If you claim any property mentioned by you is your own and separate property, please list such property claimed as separate property, and state the facts upon which you base your claim."

The interrogatories were otherwise concerned with respondent's employment, earnings, occupation and proposed arrangements for child care in the event he would be awarded custody. Respondent filed answers to all the interrogatories, in which he stated that the car, kitchen appliances, TV, clock-radio, sewing machine and household appliances were marital property. His answer to interrogatories also contained a list of both specific and generally described personal property, all of which he claimed as his non-marital property by reason of

his ownership of it prior to the marriage.

By a record sheet entry on November 16, 1982, the case was set for trial on December 15, 1982. On December 10, 1982, respondent again filed a petition for writ of *habeas corpus ad testificandum*. On December 15, 1982, the case was continued to December 30, 1982. On December 21, 1982, respondent sent a letter to the clerk of the court inquiring whether his December 10 petition for a writ of *habeas corpus ad testificandum* could be used for the new court date or whether he would have to file another petition. The clerk replied by stating that she did not know and could not advise respondent. Subsequently the cause was again continued to January 20, 1983, and respondent filed another petition for writ of *habeas corpus ad testificandum*.

On January 26, 1983, the court denied respondent's petition for writ of *habeas corpus ad testificandum*, and a trial was held on the petition. Respondent, of course, did not appear, and he was not represented.

The transcript of the proceedings at trial consists of but three pages. The questions asked of and answered by the petitioner related to the marriage, the birth of the child, the marital discord, which was described in general terms, respondent's conviction of the crime of indecent liberties with a minor and petitioner's need for $25 per week as child support. Petitioner's attorney asked no questions regarding the property of either of the parties, marital or otherwise, nor was any evidence of any nature offered that would address the issues raised by the property claims contained in respondent's answer and answer to interrogatories.

On January 26, 1983, the date of the trial, the court rendered a judgment that disposed of all issues. It contained findings generally responsive to the allegations of the petition. Although no express findings regarding property of the parties was made, there was a general finding that "[t]he Plaintiff has proved the material allegations of her Petition for Dissolution of Marriage by substantial, competent and relevant evidence ***." The dispositional portion of the judgment granted petitioner a dissolution of marriage, awarded her the custody of the minor child and ordered respondent to pay $25 per week child support. Petitioner was assigned "her non-marital property, including all property now in her possession." The respondent was directed to pay certain enumerated debts, and each of the parties was barred from any claim to the property of any kind of the other party. Respondent's motion for a new trial was denied, and respondent's *pro se* appeal ensued.

In his brief the respondent takes the position that the due

process clauses of both the Federal and State constitutions assure him the right to be present in court throughout proceedings to which he is a party, whether those proceedings be civil or criminal. Defendant's assertion is correct insofar as it states the general rule, but it is not to be taken as an absolute. It is well established that a party to an action has the right to be present at trial. (*Hubbard v. Hubbard* (1980), 84 Ill. App. 3d 761, 405 N.E.2d 1362; *Village of Elmwood Park v. Keegan* (1975), 26 Ill. App. 3d 925, 326 N.E.2d 92.) In *Village of Elmwood Park v. Keegan* the court speaks of the rule as one of fundamental fairness that applies to both civil and criminal cases. But other cases have held that the right of a party to be present throughout the whole of a trial is protected by the due process clause. *Grant v. Paluch* (1965), 61 Ill. App. 2d 247, 210 N.E.2d 35; *In re Estate of Hoffman* (1964), 49 Ill. App. 2d 436, 200 N.E. 2d 37; *Gross v. Johnson* (1928), 248 Ill. App. 531.

It should be emphasized that none of the foregoing cases involved the right of an inmate of a penal institution personally to attend a trial of a civil case in which he is a party. It is obvious that conviction of a crime and incarceration serve to alter drastically the constitutionally protected status of inmates. Although the very purpose of imprisonment is to deprive persons of many of the rights possessed by citizens, the loss is not total. Chief among the rights that prisoners lose is, of course, the right to freedom of travel and movement. Accordingly, prisoners are not free to attend upon trials in civil cases, even though they may be a party to the proceeding. Section 5—5—5 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—5) is concerned with the loss of rights by those imprisoned. It takes the approach that "conviction and disposition" shall not entail the loss of civil rights except as specified. Neither the freedom of movement nor the attendance upon trials by prisoner-parties are among the specified exceptions. Imprisonment, then, in and of itself, is a deprivation of the right to attend a trial as a matter of choice.

But the matter cannot end there. Factors other than isolation of a prisoner from society must be considered. Oftentimes prison inmates have knowledge of transactions that may be essential to a proper adjudication of rights of other parties-litigant before a court in either a civil or criminal case, or a prisoner's testimony may be essential to a proper resolution of disputes involving the propriety of his own conviction and continued detention. It may also be that a prisoner's legally protected civil interests in property or status can be properly adjudicated in a civil case only by resort to the testimony of the prisoner.

In *Moeck v. Zajackowski* (7th Cir. 1976), 541 F.2d 177, the court considered the issue of whether a lawfully incarcerated state prisoner was entitled to be personally present at the trial of a civil action that did not relate to the terms of his confinement. The prisoner had filed an action for damages against a police officer in the district court. At the instance of the prisoner, the district court at first issued, but later withdrew, a writ of *habeas corpus ad testificandum*, electing instead to enjoin the prison warden "from interfering in any way with the presence of [the prisoner] in the courtroom of this court [on the stated date and time]." The district court held that the prisoner, in bringing an action pursuant to 42 U.S.C. sec. 1983 (1976), had a fundamental interest of access to the courts for a judicial determination of Federal constitutional rights and that that access included the right of personal attendance at trial. The Circuit Court of Appeals reversed.

> "We do not agree with the district court as to the content to be ascribed to the fundamental interest of a prisoner in access to the courts. We accord greater weight to the interest of the state in maintaining the confinement of persons serving sentences at the place and institution chosen by the state, in avoiding risks of escape, and in economical administration of custody without incurring expenses which the state reasonably deems unnecessary. ***
>
> We find no support in the Constitution or in judicial precedent for the proposition that a prison inmate has a fundamental interest in being present at the trial of a civil action to which he is a party, sufficient to outweigh, as a matter of course, the interest of the state in avoiding expense. The due process requirements of the Fifth and Fourteenth Amendments, which guarantee access to the courts, do not grant a prisoner the right to attend court in order to carry on the civil proceedings which he initiates." (*Moeck v. Zajackowski* (7th Cir. 1976), 541 F.2d 177, 180.)

The court in the *Moeck* case noted that in *Johnson v. Avery* (1969), 393 U.S. 483, 21 L. Ed. 2d 718, 89 S. Ct. 747, the Supreme Court had extended to prisoners access to law libraries and jailhouse lawyers to enable them to establish legal claims and to provide them the means to file suits. The court also noted that in *Wolff v. McDonnell* (1974), 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963, the Supreme Court had declined to extend the right of access to the courts to include personal attendance at trials or hearings. (See also *Bounds v. Smith* (1977), 430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491.) The court concluded its discussion of the issue with an acknowledgment

that in the proper circumstances the fulfilment of the right of access to the courts may require the personal attendance of a prisoner-party.

"It can be granted that the right of a prisoner to file a civil action may have little meaning if success is reasonably dependent on his immediate presence in court, and such presence is denied. But we would not accord him an automatic right to be present, and thus present the state, as was done by the relief granted here, with the choice of releasing him from custody, or bringing him to court at substantial expense.

We suggest, although it will be seen that it may not be strictly necessary to this decision, that the determination whether a prisoner's interest in being present in court outweighs the state's relevant interests, is a discretionary one. Some of the relevant considerations would seem to be: How substantial is the matter at issue? How important is an early determination of the matter? Can the trial reasonably be delayed until the prisoner is released? Have possible dispositive questions of law been decided? Has the prisoner shown a probability of success? Is the testimony of the prisoner needed? If needed, will a deposition be reasonably adequate? Is the prisoner represented? If not, is his presence reasonably necessary to present his case?" (*Moeck v. Zajackowski* (7th Cir. 1976), 541 F.2d 177, 181.)

The *Moeck* court remanded the case to the district court for that court to exercise its discretion in making a determination whether presence of the prisoner at the trial was reasonably necessary or not and for further proceedings consistent with the opinion.

We have determined that the approach of Illinois courts to the matter of attendance of prisoners at court proceedings to which they are a party is similar to that expressed in *Moeck v. Zajackowski*, although never so succinctly stated in any Illinois authority. Illinois has a statute that empowers circuit courts to obtain the attendance of prisoners "to testify" at trials, either civil or criminal. That statute (Ill. Rev. Stat. 1981, ch. 65, par. 34, subsequently transferred to ch. 110, par. 10—135) is, in the Illinois Revised Statutes, entitled "Habeas Corpus to testify," and parallels the common law writ of *habeas corpus ad testificandum.*

Whether the testimony of a prisoner is sought for a civil or a criminal case, and whether or not the prisoner is a party to the case, it is a matter that lies within the sound discretion of the court whether to issue an order of *habeas corpus ad testificandum.* (By virtue of ch. 110, par. 2—1501, "writs" are abolished. Accordingly we

use the term "order" of *habeas corpus ad testificandum*.)

Where hearings are held pursuant to the post-conviction law (Ill. Rev. Stat. 1981, ch. 38, par. 122—1 *et seq.*), the court is expressly granted the right to exercise discretion to obtain the presence of the petitioner before the court. (Ill. Rev. Stat. 1981, ch. 38, par. 122—6; *People v. Stovall* (1970), 47 Ill. 2d 42, 264 N.E.2d 174.) Presence, where required, is obtained by an order of *habeas corpus ad testificandum*. *People v. Ashley* (1966), 34 Ill. 2d 402, 216 N.E.2d 126; *People v. Adams* (1954), 4 Ill. 2d 453, 123 N.E.2d 327.

As might be expected, there is far less resort to orders for *habeas corpus ad testificandum* to secure the presence of prisoners in the trial of civil cases than in criminal cases. Two Illinois cases, while acknowledging the necessity of prisoner presence to be a matter that lies within the discretion of the court, nevertheless seem to narrow that discretion considerably, almost to the point that only compelling circumstances will excuse the issuance of the order when sought. *Van Vlissingen v. Van Vlissingen* (1912), 173 Ill. App. 124, was, like the one under consideration, a divorce case. The petitioner-wife alleged as grounds that the respondent had been convicted of a felony. Respondent retained an attorney who filed an answer and appeared at trial on behalf of respondent-prisoner. The trial court denied respondent's petition for a writ of *habeas corpus ad testificandum* and granted the petitioner a divorce and other relief. The appellate court reversed, finding that the trial court had erred in refusing the writ of *habeas corpus ad testificandum*.

> "While the disposition of such a petition is within the discretion of the court, yet we are inclined to hold that a prisoner confined within the jurisdiction of the court is in most cases entitled to the aid of the court in obtaining his presence at a trial where he is a defendant. (Church on Habeas Corpus, 2nd Ed., Sec. 94, p. 151.) It is not a sufficient answer to say that opposing counsel will admit that if present defendant would testify as set forth in the petition. His presence in court to face the complainant and the witnesses and to assist his counsel during the trial, are rights of which he should not be deprived except under extraordinary circumstances." *Van Vlissingen v. Van Vlissingen* (1912), 173 Ill. App. 124, 127.

*Vachata v. Vachata* (1965), 58 Ill. App. 2d 78, 207 N.E.2d 129 (abstract of decision), was a decision of this court rendered in an action in which the plaintiff-wife sought to annul her marriage to the defendant, a prisoner at the time of trial. Defendant filed an answer *pro se* and a petition for a writ of *habeas corpus ad testificandum*. The ap-

plication for the writ was denied. The trial court entered a decree annulling the marriage. Defendant took an appeal *pro se*, assigning as error the refusal of the trial court to grant the writ of *habeas corpus ad testificandum*. This court referred to *Van Vlissingen v. Van Vlissingen* and *People v. Adams*, and concluded:

> "After a careful examination of the record before us, including the many petitions and motions filed both in the trial court and this court, we conclude that this is the *rare instance* in which defendant's presence would not have affected the result and will not say that the trial court abused its discretion in failing to issue the writ." (Emphasis added.) *Vachata v. Vachata* (1965), 58 Ill. App. 2d 78, 207 N.E.2d 129.

More extensive consideration was given the issue in a more recent case from this court, *Odom v. Odom* (1971), 133 Ill. App. 2d 869, 272 N.E.2d 272, in which a divorce proceeding was initiated by a complaint that alleged as grounds that the defendant-husband had been convicted of a felony. Defendant filed an answer and, through an attorney, appeared on the date for trial and asked for a continuance to permit the issuance of a writ of *habeas corpus ad testificandum*. The motion was denied, and the plaintiff-wife was granted a divorce and custody of a child. Defendant appealed, contending that it was improper for the court to proceed with the divorce hearing in his absence. In affirming the trial court, we stated:

> "A writ of *habeas corpus ad testificandum* is not the high prerogative writ of the more familiar writ of *habeas corpus* whose great object is deliverance from unlawful imprisonment. Its issuance lies rather in the sound discretion of the court and its purpose is merely to bring a prisoner into court to testify. (*In re Thaw*, 166 Fed. 71; 39 Am. Jur. 2d, *Habeas Corpus*, Sec. 2.) In the case before us, apart from the obvious reasons of distance, expense and the ever present danger in transferring a prisoner to court, there were other pertinent reasons militating against issuance of the writ." (*Odom v. Odom*, 133 Ill. App. 2d 869, 871, 272 N.E.2d 272, 273.)

We found in the *Odom* case that since defendant had been represented by an attorney, and since even if he had been present he would have been unable to refute plaintiff's case, the trial court had not committed a breach of discretion in denying the writ of *habeas corpus ad testificandum*. The *Odom* case did not cite either *Van Vlissingen v. Van Vlissengen* or *Vachata v. Vachata*.

In *In re Estate of Richardson* (1972), 7 Ill. App. 3d 413, 287 N.E.2d 534, the court held, without discussion, that a prisoner had no

constitutional right to a writ of *habeas corpus ad testificandum* to enable him to appear personally in court to present and argue his *pro se* motion to set aside an order approving a settlement in a dramshop action in which he was the nominal plaintiff in an action for damages for loss of support of his children.

Upon consideration of the foregoing authorities, we think prudence and policy dictate our adoption of the rule and reasoning of *Moeck v. Zajackowski*, such course being especially indicated by *Odom v. Odom*. We do not reject *Vachata v. Vachata* or *Van Vlissingen v. Van Vlissingen*, for they stand for the proposition that it lies in the discretion of the court to grant or deny a request for an order of *habeas corpus ad testificandum* to secure the presence of a prisoner for the purpose of giving testimony in the trial of a case. But beyond that, if it be thought that the scope of the discretion accorded the court is limited by the particular language used in those cases, they should not be taken as authoritative. The scope of the discretion possessed by the trial court in these instances is more broad, as properly indicated in *Moeck v. Zajackowski*.

In the case under consideration there is a petition which prays for dissolution of marriage, child custody, maintenance, child support, attorney fees, costs and assignment to petitioner of her nonmarital property. Respondent-prisoner filed an answer in which he denied causing petitioner any extreme and repeated mental cruelty and averred that the parties acquired marital property. In addition to his answer, the respondent filed answers to interrogatories which listed property claimed by him, all as detailed in the above stated facts. On the day set for hearing, respondent's petition for order of *habeas corpus ad testificandum* was denied, with the following record sheet entry:

> "Motion [sic] application for writ of Habeas Corpus ad Testificandum denied."

The application for an order of *habeas corpus ad testificandum* was not otherwise mentioned, either in the transcript of the hearing or in the judgment of dissolution.

■ The judgment granted dissolution of marriage, custody of the child, $25 per week child support, attorney fees and costs. With regard to the property of the parties, the judgment assigned to the petitioner "her non-marital property, including all property now in her possession." No description or listing of this property was given. The judgment next ordered respondent to pay six stated items of debts although there was no evidence whatsoever touching the origin, purpose or amount of any of them. The judgment concluded on the mat-

ter of property disposition with:

"7. Any right, claim, demand or interest of the parties in and to the property of the other, whether real, personal or mixed, of whatsoever kind and nature and wheresoever situated, including but not limited by homestead, succession and inheritance, arising out of the marital relationship or any other relationship existing between the parties hereto is forever barred and terminated."

It can be seem that the judgment entered by the trial court was well beyond the purview of the evidence offered by petitioner at the hearing. We have particular concern with the treatment of the property and debts of the parties because ownership was specifically placed in issue by respondent's answer and answer to interrogatories that listed several specific items of property that ostensibly would be of more than nominal value. Despite this state of the record and the total absence of evidence, the judgment awarded to the petitioner "all property in her possession," ordered the respondent to pay six items of indebtedness and barred him from ever making any further claim against anything awarded to petitioner. It thus appears that a serious miscarriage of justice may have occurred in the form of a summary seizure of respondent's property.

Had respondent been present at the hearing through the office of an order of *habeas corpus ad testificandum*, his interest could have been advanced to and protected by the court. The plain indication is, however, that scant, if any, consideration was given to the *habeas corpus* application. The trial court simply failed to exercise its discretion in the matter. If it had done so, it could have led to proper inquiry into defendant's claims and spawned further evidence touching the matters in issue, especially those relating to the disposition of property and the payment of debts. There then could have been no necessity for respondent's presence. As a minimum, the court could have balanced the interests of the State against the interests of the respondent in being present at the trial and could have made a reasoned exercise of its discretion in the matter.

■■ ■ While the evidence adduced upon the issues of dissolution of marriage, child custody and support and the payment of plaintiff's attorney fees was minimal, we think the judgment was correct as to those matters, and as to them the judgment is affirmed. However, that portion of the judgment that disposes of the property and orders payment of debts is reversed and remanded for further hearing. Also, the order that denied respondent's application for an order of *habeas corpus ad testificandum* is reversed. In connection with the rehear-

ing, the trial court should exercise its discretion with regard to the granting of defendant's application for an order of *habeas corpus ad testificandum,* considering those factors and interests as they are set forth above from the case of *Moeck v. Zajackowski.* It may well be that after hearing petitioner's evidence regarding the various property interests and claims of the parties, the presence of the respondent will be unnecessary, or at least, the interests of the State will be found to outweigh the need for respondent's testimony in resolving the property issues, and the order of *habeas corpus ad testificandum* can be denied. But if the court feels that respondent's interests are not being protected, or that he is being denied fundamental fairness, then the court should, in its sound discretion, order defendant brought to the hearing.

Affirmed in part; reversed in part; and remanded.

KARNS AND KASSERMAN, JJ., concur.