712 P.2d 749

**George GORDON, Plaintiff-Appellant,**

**v.**

**Richard NOBLE, Mike Quintieri and Keith Schultz, Defendants-Respondents.**

**No. 15412.**

Court of Appeals of Idaho.

Jan. 2, 1986.

George Gordon, pro se.

Michael E. Ramsden of Quane, Smith, Howard & Hull, Boise for defendant-respondent, Noble.

J. Patrick Riceci, Boise, for defendants-respondents, Quintieri and Schultz.

SWANSTROM, Judge.

George Gordon was twice arrested by Boise Police Officer Richard Noble for operating unlicensed or unregistered motor vehicles. Gordon sued Noble and two other defendants, Mike Quintieri and Keith Schultz for damages because Noble directed Quintieri and Schultz, operators of private towing companies, to pick up and impound the vehicles. Gordon's complaint was styled as a trover action. This appeal comes to us after the trial court entered a directed verdict for defendants Quintieri and Schultz, and a jury returned a verdict in favor of defendant Noble. Gordon, appearing pro se throughout these proceed-ings, appealed the decision to the district court which affirmed the magistrate's judgment. This appeal followed. We affirm.

Gordon seeks either the return of the vehicles or money damages for their conversion by the defendants. He raises essentially two questions; first, was Officer Noble authorized to impound the vehicles; and second, were the private towing companies authorized to keep the vehicles after Gordon requested their return. Gordon alleges that his property was taken without due process of law and held for ransom. He also asserts that it was error for the court to treat his common law trover action as governed by the Idaho Tort Claims Act (ITCA).

We first address the liability of Officer Noble. The jury was given instructions based on the Idaho Tort Claims Act (ITCA), I.C. § 6–901 to –928. As noted, Gordon did not sue under the ITCA, but sued instead in trover, preferring to claim his rights under common law instead of statutory law. Gordon's position is not only that the ITCA is inapplicable but that he is "exempt" from such statutory law. Gordon cites to the law of conversion to support his trover action. Conversion is the dominion over chattels by a person not the owner, which is inconsistent with the rights of the owner. *Schlieff v. Bistline*, 52 Idaho 353, 15 P.2d 726 (1932). It is essentially a tortious act. *Id.* Since conversion is a tortious act, and in this case allegedly committed by a governmental employee acting within the course or scope of his employment, Gordon's claim against Officer Noble is within the purview of the ITCA. In an earlier case we addressed similar contentions by Gordon that he was exempt from statutory law. *See Gordon v. State*, 108 Idaho 178, 697 P.2d 1192 (Ct. App.1985). We remain unconvinced that his contention has merit.

The ITCA authorizes tort claims against governmental entities and employees for their negligence or wrongful acts or omissions when engaged in activities for which an individual could be held liable. How-

ever, I.C. § 6–904 provides exceptions to this liability:

A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:

1. Arises out of any act or omission of an employee of the governmental entity exercising ordinary care, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

. . . .

4. Arises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

These exceptions were upheld as a valid exercise of legislative power in *Haeg v. City of Pocatello*, 98 Idaho 315, 563 P.2d 39 (1977).

The jury in the present case was also given an instruction based upon I.C. § 49–692 which authorizes police officers to remove vehicles under certain conditions. This statute provides in part:

Officers authorized to remove vehicles.—

. . . .

(3) Any police officer is hereby authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway when:

. . . .

(b) The person or persons in charge of such vehicle are unable to provide for its custody or removal, . . . .

■ Thus, the jury could have concluded that Officer Noble was authorized by I.C. § 49–692 to impound the vehicle, or that in any event, the ITCA provided him immunity from liability for a wrongful impound-

ing. In regard to the lawfulness of Officer Noble's actions, we note that under enumerated circumstances I.C. § 49–692 authorizes the removal of a vehicle "found upon a highway." Here, the vehicles were located in parking lots when impounded. Also, Gordon protested the taking of the vehicles, and on both occasions he requested that the vehicles be turned over to his "agent" who accompanied him. Gordon argues that Officer Noble had no authority to have the vehicles impounded and removed from private property without Gordon's consent when he, Gordon, was able to provide for their custody. It is possible that Gordon could have obtained the proper registration and license plates, returned later, attached the plates and taken the vehicles lawfully away. These facts do not put this case squarely into the language of I.C. § 49–692.

On the other hand, Officer Noble was faced with an unusual situation. The first traffic stop occurred when Officer Noble observed a motorcycle with an expired plate and a loud muffler. The driver, later identified as Gordon, refused to identify himself or produce a driver's license. Officer Noble discovered that the motorcycle was registered to an Emmett, Idaho resident, while the license plate had been issued for a different motorcycle. Gordon refused to explain the discrepancies, and was taken into custody. The second incident involved a car. On that occasion Gordon was driving without license plates. Officer Noble recognized Gordon, who again refused to produce a driver's license. Noble called in the vehicle identification number and found the car to be registered to someone other than Gordon. Again, Gordon refused to explain and was taken into custody, and again, a towing company was called to impound the vehicle. Had Gordon been able to show proof of ownership to Officer Noble before the vehicles were impounded against his will, and with an "agent" present to take them, we would have a much different case.

Gordon maintains that his status as a "free and natural citizen" places him be-

yond the regulatory statutes contained in the motor vehicle code. We have already decided against Gordon on that contention, in another case. *See Gordon v. State, supra.*

Gordon further contends that by impounding his vehicles, Officer Noble held the vehicles for "ransom" as a form of punishment for noncompliance with the motor vehicle licensing and registration statutes. He asserts this "curbside justice" chills the free exercise of rights by the citizenry. Although we do note that the vehicles were initially taken without any judicial process, we cannot view Gordon's self-proclaimed exemption from the regulations involved, and his refusal or inability to provide Officer Noble with proof of ownership, as the reasonable exercise of a citizen's rights. It was Gordon who gave Officer Noble the Hobson's choice of impounding the vehicles under questionable statutory authority or simply letting vehicles of undetermined ownership slip away. It plainly appears, and the jury implicitly found, that Officer Noble made the choice "without malice or criminal intent" as denoted by I.C. § 6–904. Accordingly, we need not decide whether his choice was the right one under I.C. § 49–692, because even if it was not, I.C. § 6–904(1) precludes liability of Officer Noble in this action.

■ The next question is whether the retention of the vehicles by Quintieri and Schultz was authorized. We believe that in this case it was. Officer Noble instructed the two operators to remove the vehicles and to release them only upon a proper showing of ownership. Gordon sought the return of the vehicles but never provided documented proof of ownership. Gordon directs our attention to *Capson v. Superior Court of State of Arizona, etc.,* 139 Ariz. 113, 677 P.2d 276 (1984). That case

held that a towing company, which removed a car from a no-parking zone at a private apartment building, did not have a possessory lien for towing and storage charges. The court recognized that a common-law garagemen's lien arises only when value is imparted to a vehicle by performing work or providing material. In *Capson,* the Arizona court prospectively applied the state's theft statute to tow operators who refuse to relinquish possession and who have no consensual, statutory or common law lien. The case goes on to note that absent a statutory lien, which was unavailable, the only remaining basis for the tow company to retain a vehicle would be a consensual lien. Here, at the time Gordon's vehicles were impounded, the towing companies had no statutory lien to justify continued retention of the vehicles. Like other ordinary, unsecured creditors, towing companies had to resort to collection proceedings.[1]

Were it not for Gordon's refusal or inability to prove his title to these vehicles we might well follow the reasoning of the *Capson* case. Quintieri and Schultz had no lien authority to keep these vehicles against the will of the owner. However, Gordon would not, or could not, prove that he was in fact the owner, and was therefore entitled to possession of the vehicles. The instructions given by Officer Noble authorized Quintieri and Schultz to retain the vehicles until the owner, upon sufficient proof of title, called for them. This was never done. Gordon has not shown that the vehicles were tortiously withheld from him as security for payment of the towing and storage fees. We affirm the directed verdict of the trover action in favor of Quintieri and Schultz.

Quintieri and Schultz were granted judgment on their counterclaim for towing and storage charges. In an order preceding

1. At the time the vehicles were removed, I.C. § 49–592 provided that abandoned vehicles could be held by towing companies until payment of the towing and storage fee, and if unclaimed could then be sold. However, this "lien" was predicated upon the vehicle first having been abandoned. Idaho Code § 49–592 was repealed in 1982 and replaced with Chapter 35, Title 49, Idaho Code. This new chapter does provide a possessory lien for towing and storage. Since Chapter 35 was not yet in effect at the time of the impoundment of the vehicles the lien does not apply to this case.

the judgment, the magistrate concluded that, because the towing operators had been authorized by Officer Noble to impound and hold the cars until proof of ownership was furnished, the operators were "entitled to storage charges for the time the vehicles have been in the custody of the defendants." The trial court did not explain upon what legal theory *Gordon,* rather than the City of Boise, should be liable for the towing and storage costs. The order authorized Quintieri and Schultz to release the vehicles to Gordon without any further proof of ownership upon Gordon's payment of the charges contained in the judgment.

■ Gordon now argues that forcing him to pay the charges is punishment for failure to comply with the vehicle registration statutes. He also now asserts that the magistrate erred in awarding judgment against him for the operators' charges. There may be some merit to his assertions. However, the record shows that Gordon did not raise this issue in his appeal from the magistrate division to the district court.

Nor was the issue considered and decided in the district court on its merits. The district court in this case functioned as an intermediate appellate court. "It is well settled that when a second appeal is taken, the appellants may not raise issues in the higher court different from those presented in the intermediate court." *Centers v. Yehezkely,* 109 Idaho 216, 217, 706 P.2d 105, 106 (Ct.App.1985). Therefore, we will not determine the merits of this issue here.

The decision of the district court affirming the magistrate court's orders and judgment is affirmed. Costs to defendants Noble, Quintieri and Schultz. We decline to award attorney fees.

WALTERS, C.J., and BURNETT, J., concur.