975 P.2d 793

**STATE of Idaho, BUREAU OF CHILD SUPPORT SERVICES, Plaintiff– Respondent,**

v.

**Roy R. GARCIA, Defendant–Appellant.**

No. 24384

Court of Appeals of Idaho.

Feb. 2, 1999.

Roy R. Garcia, pro se appellant.

Hon. Alan G. Lance, Attorney General; Jennifer A. Peterson, Special Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Roy R. Garcia appeals from a judgment ordering him to pay a specified amount of child support for his three minor children. The principle issue presented is whether Garcia, an inmate incarcerated by the State of Idaho, was deprived of due process when the magistrate neither acted upon Garcia's motion to appear at the trial by telephone nor otherwise made provision for Garcia's participation in the trial. Because we conclude that Garcia was not afforded due process, we vacate the judgment and remand for further proceedings.

## FACTS

Roy R. Garcia is an inmate in the custody of the Idaho Department of Corrections, but at all times relevant to this case he was incarcerated out-of-state at the Frio Detention Center in Texas. The Idaho Bureau of Child Support (Bureau) brought this action against Garcia for the collection of child support, apparently because the Department of Health & Welfare had made public assistance payments for the benefit of Garcia's three minor children. The Bureau's complaint asked the court to establish a monthly child support obligation for Garcia, require him to carry medical insurance for the children and require that he pay fifty percent of all medical expenses of the children not covered by insurance. The action was initiated in April 1997 while Garcia was incarcerated in Texas.

Garcia filed an answer to the complaint, together with a petition for leave to proceed in forma pauperis and an affidavit of poverty. In his verified answer, Garcia stated that the maximum amount that could be earned by an inmate in the correctional institution where he was incarcerated was less than $30 per month. The answer acknowledged Garcia's obligation to support his children but requested that he be exempt from payment of child support during his incarceration.[1]

A trial date was set for July 10, 1997. On June 9, 1997, Garcia filed a motion to appear at trial telephonically, citing the impossibility of his appearing in person at trial in Idaho while imprisoned in Texas. The motion was not accompanied by a notice of hearing. Because the time for trial was drawing near and he had not received a decision on the motion, Garcia wrote a letter to the magistrate on July 2, inquiring into the status of his motion. The magistrate responded by letter on July 8, stating that no action had been or would be taken on the motion because it was not noticed for a hearing. A court trial was conducted on July 10, 1997, without any participation by Garcia.

In his findings of fact and conclusions of law, the magistrate did not mention Garcia's assertion in his verified answer that he could earn no more than $30 per month. The magistrate found that Garcia was capable of earning the minimum wage, or $823 per month, and observed that the Idaho State Guidelines create a rebuttal presumption that a minimum amount of child support is $50 per month per child. *See* I.C.S.G. § 4(d). Finding that this presumption had not been rebutted, the magistrate concluded that Garcia should be ordered to pay child support at a rate of $50 per month per child during his incarceration and, commencing thirty days

---

1. Garcia represents that his earliest parole eligi- bility will be in 2003.

following his release from prison, should be ordered to pay at the rate of $231 per month. Judgment was entered accordingly, together with an award of attorney fees in favor of the Bureau.

Garcia took an appeal to the district court. He asserted, *inter alia,* that the magistrate had erred in failing to grant Garcia's motion to take part in the trial by telephone. Garcia also requested an order allowing him to participate in the appellate oral argument telephonically, which the district court granted. The Bureau filed a motion to dismiss the appeal on the basis that Garcia had not complied with the provisions of I.C. § 31–3220A concerning civil litigation by indigent prisoners. The court heard oral argument by telephone and thereafter denied Garcia's appeal. The court concluded that the appeal should be dismissed because Garcia had not complied with I.C. § 31–3220A, and also ruled against Garcia on the merits.

On further appeal to this Court, Garcia contends that the district court erred in dismissing his appeal for noncompliance with I.C. § 31–3220A and in approving the proceedings in the magistrate court which, Garcia urges, deprived him of due process of law.

## ANALYSIS

### A. Idaho Code Section 31–3220A

■ Idaho Code Section 31–3220A prescribes procedures to be followed when prisoners seek to file certain types of civil "actions" without the payment of court fees or with partial payment of court fees. Under that statute, an "action" includes the filing of an appeal. I.C. § 31–3220A(1)(a). The statute requires that, contemporaneously with filing an action, the prisoner must also file:

2. Idaho Code Section 31–3220A(2) provides in part:

> A prisoner who seeks to file an action without payment of court fees or with partial payment of court fees required in sections 31–3201 and 31–3201A, Idaho Code, shall file the following at the time of filing of an action: (a) A motion to proceed without payment of court fees or for partial payment of court fees under this section; (b) An affidavit of inability to pay court fees as set forth in section 31–3220(3), Idaho Code; and

(1) a motion to proceed without payment of fees; (2) an affidavit of inability to pay court fees; and (3) a certified copy of his or her inmate account reflecting account activity during the entire period of incarceration or the last twelve months, whichever is less.[2]

Garcia did not pay a filing fee upon the filing of his appeal to the district court. According to the district court's appellate order, Garcia also did not file a record of his inmate account as required by I.C. § 31–3220A(2)(c). Due to this procedural deficiency, the district court concluded that Garcia's appeal was improperly taken.[3]

■ The dismissal of Garcia's intermediate appeal cannot be upheld on this basis, for the district court itself did not comply with procedures mandated by § 31–3220A. That statute does not authorize summary dismissal of a prisoner's appeal or other action immediately upon a determination that the prisoner neither paid the requisite court fees nor strictly complied with the statutory procedures to obtain leave to proceed without payment. Rather, the statute requires that a prisoner be given notice and an opportunity to make payment before the proceeding may be dismissed. Specifically, subsections (4) and (5) of the statute provide:

> (4) If the court finds that the prisoner is not an indigent prisoner, the court shall order the prisoner to pay all or part of the court fees as set forth in sections 31–3201 and 31–3201A, Idaho Code.

> (5) The court may dismiss an action filed under this section, in whole or in part, on its own motion or by motion of a party, upon a finding that:

> (c) A certified copy of his inmate account that reflects the activity of his account over his period of incarceration or for twelve (12) months, whichever is less. The copy of the prisoner's inmate account shall be certified by a custodian of inmate accounts of the office of the county sheriff or the department of correction.

3. Garcia contends that he filed documents substantially complying with I.C. § 31–3220A. However, because the record on appeal to this Court is incomplete in that regard, we cannot assess the sufficiency of his filings.

(a) The nonindigent prisoner has failed to pay the court fees under subsection (4) of this section within thirty (30) days of the entry of the order for court fees, or any time thereafter....

The statute thus contemplates that the court must make a finding as to the prisoner's indigence, issue an order for payment of full or partial fees if the prisoner has not demonstrated indigency, and allow the prisoner thirty days to comply before the prisoner's action can be dismissed. The record before us indicates that the district court did not follow this procedure. The court did not make any finding on Garcia's indigency, evidently did not consider the alternative of allowing Garcia to proceed on payment of only part of the applicable fees, did not issue an order specifying the amount of fees that Garcia would be required to pay, and did not allow him thirty days within which to pay. These procedures are mandated by the statute in order to give a prisoner an opportunity to preserve his action when indigency has not been proven to the satisfaction of the court. Without this opportunity having been afforded to Garcia, the dismissal of his appeal for non-payment of fees and noncompliance with § 31-3220A cannot be sustained.[4]

**B. Garcia's Motion to Appear Telephonically**

We turn, then, to Garcia's assertion that the magistrate erred by failing to grant Garcia's motion to appear at the trial by telephone. The magistrate did not consider the motion because Garcia had not scheduled a hearing. The district court affirmed this disregard of the motion and also pointed out that the Idaho Rules of Civil Procedure do not provide for "trial by telephone conference." Neither the magistrate nor the district court addressed whether Garcia's exclusion from the trial deprived him of due process.

**1. Garcia's failure to notice motion for hearing**

 We conclude that the magistrate erred in declining to act on Garcia's motion

to appear telephonically merely because the motion had not been set for a hearing. Idaho Rule of Civil Procedure 7(b)(3) provides that when a moving party does not file a brief and does not request oral argument upon a motion, "the court may deny such motion without notice *if the court deems the motion has no merit.*" Here, however, the magistrate never addressed the merit of Garcia's motion, but expressly declined to consider it because it was not set for a hearing. Although the magistrate was correctly concerned that the Bureau should be given an opportunity to be heard on the motion, this concern could have been satisfied by the magistrate scheduling a hearing *sua sponte,* I.R.C.P. 6(e)(2), or by requesting a written response from the Bureau. Garcia's motion was supported by a statement of specific facts to justify his request to appear at the trial by telephone. Under these circumstances, the absence of a notice of hearing from Garcia, standing alone, did not justify denial or disregard of the motion.

**2. Due process**

 We thus reach the question whether the magistrate's failure to authorize Garcia's participation in the trial by telephone or to otherwise make provision for Garcia to be heard on the merits of the action deprived Garcia of due process. This assertion presents a question of law over which we exercise free review. *In re Baby Doe,* 130 Idaho 47, 51, 936 P.2d 690, 694 (Ct.App.1997).

 At the outset, we summarily dispose of one of the Bureau's arguments. The Bureau points out that the Due Process Clause of the Fourteenth Amendment mandates that the states afford due process of law only in connection with the deprivation of life, liberty or property. The Bureau then asserts that this due process guarantee is inapplicable here because the Bureau "was not seeking to deprive Appellant of life, liberty or property," but "was simply seeking to establish a child support obligation against the Appel-

---

4. The Bureau also now asserts that Garcia did not comply with the filing requirements of I.A.R. 23 in his appeal to the district court. However, because this issue was raised for the first time on appeal to this Court and was not considered by the district court, we do not address it. *See Gordon v. Noble,* 109 Idaho 1048, 1052, 712 P.2d 749, 753 (Ct.App.1986).

lant." However, by its lawsuit, the Bureau sought and received a judgment allowing it and the mother of Garcia's children to collect sums of money from Garcia. We think it abundantly clear that money is "property" and that suffering such a judgment is a deprivation of property that implicates due process rights.

■ The essence of due process is the right to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113, (1971); *Sweitzer v. Dean,* 118 Idaho 568, 573, 798 P.2d 27, 32 (1990). Decisions of the United States Supreme Court establish that the constitutional protection extends to prisoners, and affords them a limited right of access to the courts, to challenge their convictions or their confinement and to pursue actions for violations of their civil rights. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). Many other courts have held that in civil cases unrelated to the prisoner's conviction, due process requires that a trial court weigh the prisoner's interest in being present at trial against the state's interest in maintaining his confinement *See, e.g., Jones v. Hamelman,* 869 F.2d 1023, 1030 (7th Cir.1989) (civil rights action); *Holt v. Pitts,* 619 F.2d 558, 561 (6th Cir.1980) (civil rights action); *Stone v. Morris,* 546 F.2d 730, 735 (7th Cir.1976) (civil rights action); *Strube v. Strube,* 158 Ariz. 602, 764 P.2d 731 (1988) (dissolution of marriage); *State v. Valentine,* 190 Ariz. 107, 945 P.2d 828 (Ariz.Ct.App.1997) (action to establish paternity and child support); *In re Marriage of Allison,* 126 Ill.App.3d 453, 81 Ill. Dec. 610, 467 N.E.2d 310 (1984) (dissolution of marriage); *Hall v. Hall,* 128 Mich.App. 757, 341 N.W.2d 206 (1983) (divorce action); *In re Merrell,* 658 So.2d 50 (Miss.1995) (action for conversion of prisoner's money); *Salemo v. Salemo,* 381 Pa.Super. 632, 554 A.2d 563 (1989) (divorce action); *Nichols v. Martin,* 776 S.W.2d 621 (Tex.Ct.App.1989) (divorce action); *Whitney v. Buckner,* 107 Wash.2d 861, 734 P.2d 485, 489 (Wash.1987) (action for dissolution of marriage).

■ This does not mean, however, that an inmate has an absolute right to be personally present at trial in civil litigation. Rather, "[d]ue process is a flexible constitutional principle and calls for such procedural protection as the particular situation demands." *Baby Doe,* 130 Idaho at 50, 936 P.2d at 693. *See also Mathews,* 424 U.S. at 334, 96 S.Ct. 893; *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), the United States Supreme Court explained:

> The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.... [W]hat procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by government action.

In *Mathews,* the Court further specified that the following three factors are generally to be considered in determining the specific due process requirements applicable in a given circumstance:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. 893.

These pronouncements of the United States Supreme Court guided this Court's decision in *In re Baby Doe,* a case that presented circumstances similar to those presented here. In *Baby Doe,* an incarcerated father applied to the magistrate court for a writ of habeas corpus *ad testificandum* requiring that he be transported to the eviden-

tiary hearing in an action brought by the Department of Health & Welfare for termination of his parental rights. The magistrate denied the application and instead appointed counsel to represent the father and directed that the father could testify by way of a telephone deposition. The father asserted that the denial of his request to be personally present at the hearing was a deprivation of due process. We concluded that the father's due process rights were not violated because he was represented by counsel at the hearing and was allowed to present testimony by deposition.

In arriving at that conclusion, we enumerated some of the factors appropriate for consideration in balancing the private and governmental interests at stake when an inmate seeks to appear personally in court in a civil proceeding:

> [T]he trial court may take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition.

*Baby Doe,* 130 Idaho at 52, 936 P.2d at 695 (quoting *In re F.H.,* 283 N.W.2d 202, 209 (N.D.1979)). Other factors bearing upon the weight of an inmate's interest include whether the trial is to be to the court or to a jury and whether the prisoner is the only person who can provide testimony on matters material to the prisoner's position in the case. *Stone,* 546 F.2d at 736.

If, in balancing these interests, the trial court concludes that they do not weigh in favor of allowing a prisoner to appear personally, the court should then consider alternative means by which the prisoner's right to be heard may be honored. *See Baby Doe, supra; Heidelberg v. Hammer,* 577 F.2d 429, 431 (1978); *Hall,* 341 N.W.2d at 209; *State ex rel Christie v. Husz,* 217 Wis.2d 593, 579 N.W.2d 243, 246 (Wis.Ct. App.1998). Such alternatives include the appearance of the inmate by telephone, *Valentine, supra; Christie, supra,* the appointment of counsel and the presentation of a prisoner's testimony by deposition, *Baby Doe, supra; Hall, supra,* and delaying trial until the prisoner is released. *Stone,* 546 F.2d at 736; *Hall, supra; In re F. H., supra.* These options are not exhaustive, and the trial court has discretion to fashion an approach that best suits the particular circumstances. The court may not, however, bypass this balancing process by summarily rejecting or disregarding a prisoner's request to appear at trial.

Needless to say, the absence from our procedural rules of any express authorization for a party's participation in a trial by telephone is of no moment if, after conducting the foregoing balancing test, the trial court finds a telephonic appearance to be the most appropriate way to satisfy due process standards. Procedural rules are always subordinate to the dictates of the Due Process Clause.

Garcia has shown that, because the necessary consideration was not given to his request to participate in the trial by telephone, he was deprived of due process in the proceedings in the magistrate division. Therefore, the judgment must be vacated, and the matter remanded for a new trial.

In so holding, we are not directing that Garcia's request to appear by telephone must be granted. The magistrate is free to consider a spectrum of options as discussed above. Given the probable futility of any effort to collect a meaningful amount of child support from Garcia while he is incarcerated, and the impossibility of predicting what his earning capacity will be when he is paroled or discharged at least four years hence, simply postponing the trial until Garcia is released is an alternative that may warrant consideration. *Compare Nab v. Nab,* 114 Idaho 512, 519, 757 P.2d 1231, 1238 (Ct.App. 1988).

The judgment herein is vacated and the case is remanded for further proceedings consistent with this opinion. Costs are

awarded to respondent Garcia in accordance with Idaho Appellate Rule 40.[5]

Chief Judge PERRY CONCURS.

Judge SCHWARTZMAN, CONCURRING.

I fully concur in the opinion of this Court, but write only to reflect upon some of the ironies that have befallen inmate Garcia. Indeed, I would assert there is something slightly *Kafkaesque* about all of this.

From the outset, all Garcia wanted was to participate in the Idaho hearing process and express his position, given the fact that he is incarcerated in the Frio County Detention Center, located in Pearsall, Texas; is otherwise destitute;[1] and is serving a fifteen-year Idaho judgment of conviction, with ten years fixed. He files a verified *pro se* answer and meekly requests an opportunity to appear telephonically. From this point on, the system basically ignores him and, ironically, uses the fact that he failed to appear against him.

For example, the state (Bureau) asserts in its brief that "Appellant [Garcia] failed to appear at trial or to provide any evidence to rebut the presumption [that Garcia was capable of earning the minimum wage of $823 per month]." The state further argues in its brief that Garcia's defense was frivolous, unreasonable and without foundation: "The case at hand was not defended at all. Appellant [Garcia] filed an Answer to the Complaint, but failed to appear at the time of trial, either in person or through an attorney, to present any defenses to this action.... Presenting no defense at all is perhaps the most extreme example of a frivolous, unreasonable and unfounded defense. The Magistrate's order awarding attorney fees ($395.00 to the state) was not an abuse of discretion [under Idaho Code § 12–121]."

Perhaps the state is right when it asserts an argument of unreasonableness. It just cites to the wrong code section: § 12–117[2] seems more appropriate. As I said, there is something slightly *Kafkaesque* going on here.

---

**5.** Garcia received a waiver of the appellate filing fee on appeal to this Court pursuant to I.A.R. 23(c). However, he will be entitled to recover costs for the production of his appellate briefs and such other taxable costs as he may have incurred.

**1.** His current Institutional Inmate Account reflects a balance of $48.41 and his inmate janitor employment earns him 25 cents an hour, not to exceed $30 per month. From this, he must purchase his own hygiene items, writing materials, stamps, and accessories, etc.

**2.** Idaho Code § 12–117 provides for an award of attorney fees against a state agency when the court finds it acted without a reasonable basis in fact or law.