[No. 13921–5–I.   Division One.   July 23, 1984.]

LINDA D., ET AL, *Respondents,* v. FRITZ C., *Appellant.*

*Thomas M. Geisness* and *John Merriam,* for appellant.

*Eugene Green,* for respondents.

*Eric B. Watness,* for guardian ad litem.

*John W. Phillips* and *Anne O'Donnell* on behalf of Northwest Women's Law Center, amici curiae.

ANDERSEN, J.—

FACTS OF CASE

This case involves legal issues between the parents of a child born out of wedlock.

Acting pursuant to the Uniform Parentage Act (UPA), RCW 26.26, the mother and the guardian ad litem of the child brought a paternity action against the man alleged to be the father of the child. Since the man subsequently conceded paternity, we will herein refer to the parents as the mother and the father.[1]

In addition to requesting a declaration of parentage, the suit sought to require the father to pay expenses in connection with the birth of the child and child support. A decree giving legal custody of the child to the mother was also sought.

In responding to the petition filed herein, the father initially denied paternity. He also counterclaimed raising the issues presented by this appeal. The father's allegations against the mother as contained in his counterclaim are as follows:

8. That the actions and agreements between the parties constituted an oral contract in which the [mother] covenanted to use birth control; that the [mother's] failure to use birth control breached the contract; and that the refusal to abort constitutes failure to mitigate damages resulting from breach.

9. That the [mother's] cessation of birth control precautions, with knowledge that the [father] relied upon those precautions, constitutes negligent or intentional misrepresentation, or fraud: or, in the alternative,

10. That the [mother's] failure to use birth control devices on the date of conception constitutes negligence; and that refusal to abort is further negligence as a violation of the last clear chance doctrine.

---

[1] Initials rather than names have also been used in the case caption in order to protect the identity of the child.

The father also subsequently alleged deceit, claiming that the mother was fertile and knew she was fertile but falsely represented to him that she was not.

In her reply, the mother moved for dismissal of the father's counterclaim on the ground that it failed to state a claim upon which relief could be granted. CR 12(b). Blood tests were taken, following which the mother moved for summary judgment on the issue of paternity and sought temporary child support and attorneys' fees.

A hearing was held on the mother's motion in the Superior Court before a Family Law Commissioner. The father there conceded paternity and that he had an obligation to pay child support. At the hearing, however, the father also asserted that damages alleged in his counterclaim, cost of blood tests, legal fees, and the amount to be determined that he owed for back child support and childbirth costs, should be set off against his future child support obligations. The Commissioner granted summary judgment on the issue of paternity, but denied the mother's motion for temporary attorneys' fees, reserved the determination of the child support issue and denied the mother's motion to dismiss the father's counterclaim.

The mother then sought revision of the Commissioner's order in the King County Superior Court. There the mother's motion to dismiss was treated as a motion for summary judgment. CR 56. Following a hearing in the Superior Court, that court concluded that "no genuine issue of material fact cognizable at law" existed as to the father's counterclaim in this action and a judgment dismissing the counterclaim was entered. The Superior Court remanded the case to the Commissioner for the purpose of determining the amount of child support and to reconsider the attorneys' fees issue.

A finding of no just reason for delay was also entered in the Superior Court, following which the father timely sought direct review by the State Supreme Court of the Superior Court's judgment dismissing his counterclaim. The Supreme Court, in turn, transferred the case to this

court for determination.

As to the facts of the case, the mother's affidavit relates that at the outset of the parties' sexual relationship she informed the father that she had endometriosis, "a condition which renders women infertile", and adds that because he was "uneasy" she also used a contraceptive device. The mother further states that she subsequently informed the father that she was no longer using the device, and that he declined to himself use any contraceptive measures.

The father did not file an affidavit, but in his pleadings alleged that the mother had represented to him that throughout their relationship she was using a birth control device.

In March of 1981 the mother became pregnant. When she informed the father, he asked her to have an abortion. She refused. The baby, a boy, was born in December of 1981. The mother stated that the father and his mother visited the hospital and that afterward he offered to pay $200 a month for child care costs. She further stated that when she asked the father to acknowledge paternity, they both became angry and the negotiations ultimately broke down. This legal action followed.

We are presented six issues for review.

## ISSUES

ISSUE ONE. Are the father's contract and tort claims against the mother cognizable in a paternity and child support action brought pursuant to the Uniform Parentage Act, RCW 26.26?

ISSUE TWO. Was the father's constitutional right to procreative freedom violated by the trial court's refusal to permit him to raise contract and tort counterclaims in this paternity and child support action brought against him?

ISSUE THREE. Was the father's constitutional right to be free from gender–based discrimination violated by the trial court's refusal to permit him to raise his contract and tort counterclaims in this paternity and child support action?

ISSUE FOUR. Were the protections afforded to the father

by this state's Equal Rights Amendment, Const. art. 31, § 1, violated by the trial court's refusal to allow his contract and tort counterclaims to be raised in this paternity and child support action?

ISSUE FIVE. Has the father been denied the right to enforce his statutory civil right to be free from gender-based discrimination?

ISSUE SIX. Does the Uniform Parentage Act, namely RCW 26.26.130(5) therein, create an irrebuttable unconstitutional presumption that the parents' duty to pay child support is co-equal?

## DECISION

ISSUE ONE.

CONCLUSION. The allegations by the father against the mother in the father's counterclaim are not relevant to the needs and requirements of the child, or to either the child's or the mother's ability to meet those needs and respond to those requirements. The father's claims in that regard, therefore, cannot properly be raised in connection with determining the amount of a parent's child support obligation in an action brought under the UPA.

The father contends that the court's equity jurisdiction is sufficiently broad to allow him to assert his damage claims against the mother by way of a setoff against the amount of child support for which he may be liable and that to do so would not violate any rights of the child.

The question thus becomes whether one parent's alleged breach of a contract to use contraceptive measures, or negligent use or misrepresentation of actual use thereof, can be considered by the court in determining the amount to be paid by the other parent for the support of a child born as a result of the parties' sexual relationship?

The Uniform Parentage Act, as adopted by Washington in RCW 26.26, established new procedures for determining the parentage of children born out of wedlock and is aimed at equalizing the status of all children regardless of the parties' marital status. *See* Comment, *Washington's Par-*

*entage Act: A Step Forward for Children's Rights*, 12 Gonz.
L. Rev. 455 (1976–77); RCW 26.26.020–.030. Judgments and
orders entered in such actions are determinative of the
parent and child relationship for all purposes, RCW 26.26-
.130(1), and "shall" contain provisions concerning the duty
of current and future support and liability for past support,
RCW 26.26.130(3). In this regard, RCW 26.26.130(5) pro-
vides:

> In determining the amount to be paid by a parent for
> support of the child and the period during which the
> duty of support is owed, *the court shall consider all rel-
> evant facts, including, but not limited to*:
> (a) The needs of the child;
> (b) The standard of living and circumstances of the
> parents;
> (c) The relative financial means of the parents;
> (d) The earning ability of the parents;
> (e) The need and capacity of the child for education,
> including higher education;
> (f) The age of the child;
> (g) The responsibility of the parents for the support of
> others; and
> (h) The value of services contributed by the custodial
> parent.

(Italics ours.)

In determining the scope of the word "relevant" as
used in this statute, the ejusdem generis rule is applicable.
This is so because the Legislature in enacting the UPA saw
fit to adopt a "'[general], including [specific] and [spe-
cific]'" language pattern. *Southwest Wash. Chapter, Nat'l
Elec. Contractors Ass'n v. Pierce Cy.*, 100 Wn.2d 109, 116,
667 P.2d 1092 (1983). As the Supreme Court observed in
*State v. Stockton*, 97 Wn.2d 528, 532, 647 P.2d 21 (1982),
quoting *Dean v. McFarland*, 81 Wn.2d 215, 221, 500 P.2d
1244, 74 A.L.R.3d 378 (1972):

> The *ejusdem generis* rule requires that general
> terms appearing in a statute in connection with specific
> terms are to be given meaning and effect only to the
> extent that the general terms suggest items similar to
> those designated by the specific terms. In short, spe-

cific terms modify or restrict the application of general terms where both are used in sequence.

The specific factors listed in RCW 26.26.130(5), set out above, relate only to (a) the needs and requirements of the child, and (b) the ability of the respective parents of the child to respond to those needs.[2] Thus the "including, but not limited to" language in the statute quoted contemplates only those kinds of facts and does not contemplate whether one of the parents may or may not have breached a contract to use contraceptive measures, or may have negligently used or misrepresented the actual use of contraceptive measures.

We conclude that only those facts relating to the needs of the child and the ability of the respective parents to meet, or to have met, those needs are to be considered "[i]n determining the amount to be paid by a parent for support of the child", RCW 26.26.130(5). RCW 26.26.130(4) then provides that the court shall have discretion to consider the amount actually expended on behalf of the child, rather than the amount projected by that court to be reasonable or necessary for the child's support, as the basis for imposing liability on the father for past support. Nothing in the UPA permits parents in an action brought thereunder to litigate the issue of whether or not they in fact wanted the child.

It is the father's argument that his counterclaim should nevertheless be allowed as a defense or setoff to his liability for past support because that portion of the action lies against the mother alone. The UPA, however, gives *the child* the right to bring an action for back support, *Nettles v. Beckley*, 32 Wn. App. 606, 609, 648 P.2d 508 (1982), and requires that the child be made a party to the paternity and child support action when instituted by the natural

---

[2]Under this State's former filiation statute, which was the UPA's predecessor, a support decree could be modified "upon proper showing of a change of circumstances as to the child's requirements, the mother's ability to furnish support, and the father's ability to respond to the requirements of his child." *State v. Coffey,* 77 Wn.2d 630, 638, 465 P.2d 665 (1970). *See* RCW 26.26.160.

mother. RCW 26.26.090. That was done here.[3]

We conclude, therefore, that the allegations in the father's counterclaim, even if true, are not facts to be considered by the court in determining the amount of child support to be paid by a parent in an action brought under the UPA.[4]

A forceful argument is made by the child's guardian ad litem and amici curiae that to recognize the father's claims against the mother in the context of a UPA action would be discriminatory against children born out of wedlock and would render the statute unconstitutional. *See State v. Douty*, 92 Wn.2d 930, 934, 603 P.2d 373 (1979); *State v. Booth*, 15 Wn. App. 804, 806, 551 P.2d 1403 (1976); *Weber v. Aetna Cas. & Sur. Co.*, 406 U.S. 164, 175, 31 L. Ed. 2d 768, 92 S. Ct. 1400 (1972). "A reviewing court should not pass on constitutional issues unless absolutely necessary to the determination of the case." *State v. Hall*, 95

---

[3]In support of his argument, the father relies on *Hartman v. Smith*, 100 Wn.2d 766, 674 P.2d 176 (1984) wherein the State Supreme Court observed that when a marital dissolution order and judgment requires the noncustodial parent to pay child support, the cause of action for unpaid past due support lies with the custodial parent alone. *Hartman*, at 768. Although RCW 26.26 provides otherwise, those relevant "equitable principles" referred to by the *Hartman* court which may be raised regarding the father's liability for back support also relate generally to the needs of the child and the ability of the parents to meet, or have met, those needs, *i.e.*: (a) the father's detrimental reliance on any assertions that no claim would be made for support, *Hartman*, at 769; *but see* RCW 26.26.060(3); (b) any money paid directly to or on behalf of the child, *Schafer v. Schafer*, 95 Wn.2d 78, 621 P.2d 721 (1980), cited in *Hartman*, at 769; (c) any written release for past financial responsibility, *Miller v. Miller*, 29 Or. App. 723, 565 P.2d 382 (1977), cited in *Hartman*, at 769; *see also* RCW 26.26.180; and (d) the fact of the child's majority, *Stapel v. Stapel*, 4 Kan. App. 2d 19, 601 P.2d 1176 (1979), cited in *Hartman*, at 769; *but see* RCW 26.26.134.

[4]Both the Pennsylvania Supreme Court in *Hughes v. Hutt*, 500 Pa. 209, 455 A.2d 623, 625 (1983) and the New York Court of Appeals in *L. Pamela P. v. Frank S.*, 59 N.Y.2d 1, 449 N.E.2d 713, 462 N.Y.S.2d 819 (1983) have also reached this conclusion and denied this defense where the needs of the child and the means of the parents are the factors involved. The family court "is simply not the proper forum for adjudicating disputes existing solely between the parents." *L. Pamela P.*, at 5. *See also Stephen K. v. Roni L.*, 105 Cal. App. 3d 640, 164 Cal. Rptr. 618 (1980); *see also Barbara A. v. John G.*, 145 Cal. App. 3d 369, 193 Cal. Rptr. 422 (1983).

Wn.2d 536, 539, 627 P.2d 101 (1981). Accordingly, we decline to pass on that constitutional issue in this case.

ISSUE TWO.

CONCLUSION. The father's right to make an individual decision regarding procreation is not restricted by refusing to allow him to assert in this action that he now has the right to avoid his child support obligations if the mother did not successfully use contraceptive measures.

The father argues that the mother's negligent use, or her misrepresentation of use, of contraceptive measures deprived him of his fundamental constitutional right to decide whether to father a child.

■ It has been held that the constitutionally protected right of privacy includes the right of an individual "to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Eisenstadt v. Baird*, 405 U.S. 438, 453, 31 L. Ed. 2d 349, 92 S. Ct. 1029 (1972). *See also Carey v. Population Servs., Int'l*, 431 U.S. 678, 684–85, 52 L. Ed. 2d 675, 97 S. Ct. 2010 (1977). No such right, however, encompasses the right of one parent to avoid a child support obligation where the other parent's choice regarding procreation is not fully respected. *L. Pamela P. v. Frank S.*, 59 N.Y.2d 1, 449 N.E.2d 713, 462 N.Y.S.2d 819, 821–22 (1983).[5]

ISSUE THREE.

CONCLUSION. The UPA applies equally to both parents wherein it permits determination of the obligations to provide child support. RCW 26.26.130(5). The UPA also permits the amount of the father's liability for past support to be based on the expenses already incurred. RCW 26.26-.130(4). Thus there is no gender–based discrimination.

The father also asserts that by denying him the opportu-

---

[5]The father does not challenge the mother's superior rights as regards her decision not to have an abortion. *See Planned Parenthood v. Danforth*, 428 U.S. 52, 49 L. Ed. 2d 788, 96 S. Ct. 2831 (1976); *People ex rel. S.P.B.*, 651 P.2d 1213 (Colo. 1982).

nity to raise his counterclaim in this UPA action, the trial court discriminated against him on the basis of gender. He further argues that since no compelling state interest exists to justify this differential treatment his rights under the equal protection clause of the fourteenth amendment to the United States Constitution and under the privileges and immunities clause of the Washington State Constitution, article 1, section 12,[6] have been violated.

In *State v. Wood*, 89 Wn.2d 97, 569 P.2d 1148 (1977), the State Supreme Court dealt with an equal protection and Const. art. 1, § 12 challenge to the former filiation statute which preceded this State's adoption of the UPA. The Supreme Court there concluded that the father was not denied equal protection of the law by that statute. *Wood*, at 102. The UPA which succeeded the filiation statute: defines the "parent and child relationship", RCW 26.26.010; requires that facts relevant to both parents' means and ability to provide for the child's support be considered, RCW 26.26.130(5); permits the father's liability for past support to be proportional to that of the mother's, RCW 26.26.130(4); provides for an action by a father to establish the father and child relationship, RCW 26.26.060(1); and provides for an action to determine the existence of the mother and child relationship under the same provisions that are applicable to the father and child relationship, RCW 26.26.170.

The State Supreme Court's opinion in *Wood*, as well as our analysis of the provisions of the UPA itself, compel the conclusion that nothing in the UPA denies the father his right to be free from gender–based discrimination. Moreover, our holding that one parent's misconduct toward the other parent is not to be considered in determining the amount of their respective obligations for the support of

---

[6]Const. art. 1, § 12 reads:

"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

their child applies equally to both parents.

ISSUE FOUR.

CONCLUSION. The father acquired no protection under the ERA because neither a right nor a responsibility has been denied or abridged on account of sex.[7]

The statutory scheme of the UPA, RCW 26.26, places the responsibility for child support on both parents and by our holding herein both parents are precluded from raising in a UPA action contract and tort claims of the kind that the father alleged here. The father has not established that the UPA as applied herein denied him any rights or creates in him any responsibilities solely because he is the father of a child born out of wedlock. The UPA support provisions of RCW 26.26 do not violate the Equal Rights Amendment. *See Wood,* at 103.[8]

ISSUE FIVE.

CONCLUSION. Since no gender–based discrimination has been shown, this state's Law Against Discrimination (RCW 49.60) has not been violated.

The father also argues that his civil right to be free from discrimination because of sex, RCW 49.60.030(1), has been violated and that he has the right to bring a civil action to protect such right, RCW 49.60.030(2).

In *Marquez v. UW,* 32 Wn. App. 302, 309, 648 P.2d 94 (1982), *cert. denied,* 460 U.S. 1013, 75 L. Ed. 2d 482, 103 S. Ct. 1253 (1983), we stated the following principle:

> Before a violation of this state's Law Against Discrimination can be established, the aggrieved party must show "practices of discrimination *against* any of its inhabit-

---

[7]Washington's Equal Rights Amendment, Const. art. 31, § 1, provides:

"Equality of rights and responsibility under the law shall not be denied or abridged on account of sex."

[8]In essence what the father asks is that we read this State's ERA as requiring that under the UPA the family court may inquire into the private sexual activities and attendant conception decisions of two consenting unmarried adults. The protections afforded by the ERA do not extend that far. *See Darrin v. Gould,* 85 Wn.2d 859, 872 n.8, 540 P.2d 882 (1975), cited in *Southwest Wash. Chapter, Nat'l Elec. Contractors Ass'n v. Pierce Cy.,* 100 Wn.2d 109, 127, 667 P.2d 1092 (1983).

ants . . ." (Italics ours.) RCW 49.60.010; *see Ellingson v. Spokane Mortgage Co.,* 19 Wn. App. 48, 54–55, 573 P.2d 389 (1978).

*See generally Chadwick v. Northwest Airlines, Inc.,* 100 Wn.2d 221, 667 P.2d 1104 (1983). As pointed out above, the father has suffered no gender–based discrimination. It follows that no violation of this state's Law Against Discrimination, RCW 49.60, has occurred and the father has acquired no right of action herein under that enactment.

ISSUE SIX.

CONCLUSION. No constitutionally invalid irrebuttable presumption, as argued by the father herein, is created by the support provisions of the UPA, RCW 26.26.

The father contends that for the trial court to deny him his claimed setoff or defense to child support obligations in effect creates an irrebuttable presumption that "the best interests of the child would be served by a formularistic application of support tables." He argues that this, in turn, violates his due process rights.

The UPA reflects this state's compelling interest in "assuring that the primary obligation for support of illegitimate children falls on *both* natural parents rather than on the taxpayers of this state." *Wood,* at 102, and codifies the constitutional mandate of equal treatment of all children, legitimate or illegitimate, *State v. Douty,* 92 Wn.2d 930, 934, 603 P.2d 373 (1979). The UPA does not, however, create an irrebuttable presumption of co–equal support nor does it require the rigid application of child support guidelines. It specifically requires that the court consider all "relevant facts"[9] in determining the amount to be paid by each parent, RCW 26.26.130(5) and expressly provides for the exercise of discretion by the court in using the "expenses already incurred" as a basis for determining liability for past support, RCW 26.26.130(4).

It also follows from our foregoing discussion that to the

---

[9]*E.g.,* debt structure; unique occupational expenses; visitation or other direct cost sharing; other sources of income of the child.

extent that there may be any claims by the father against the mother, such are not compulsory counterclaims in a UPA action. CR 13(a).

■ The mother and guardian ad litem urge that this court determine their attorneys' fees to be assessed against the father because, *inter alia,* the issues presented by the father on appeal are frivolous. RAP 18.1. We conclude that the appeal is not frivolous, *see Streater v. White,* 26 Wn. App. 430, 434–35, 613 P.2d 187 (1980), indeed, the issues in this case are issues of first impression in this state and present debatable questions of substantial public importance. The trial court is the fact finding tribunal and, under the circumstances of this case, all claims for attorneys' fees and costs should be addressed to it.

Having decided this case on the basis we have, we need not address the other arguments made by the father in his appellate briefs.

Affirmed and remanded for further proceedings not inconsistent herewith.

DURHAM, C.J., concurs.
CALLOW, J., concurs in the result.

Review denied by Supreme Court November 2, 1984.