[No. 51681–2. En Banc. March 26, 1987.]

CHRISTINE WHITNEY, ET AL, *Petitioners,* v. ROSANNE BUCKNER, *as Judge of the Superior Court for Pierce County,* ET AL, *Respondents.*

*Mitchell A. Riese* of *Evergreen Legal Services,* for petitioners.

*William H. Griffies, Prosecuting Attorney,* and *Lloyd B. Nickel, Deputy,* for respondents.

BRACHTENBACH, J.—Petitioners Christine Whitney and David Jameyson are inmates of state correctional institutions located in Pierce County.[1] Pursuant to RAP 16.2 they brought this original action against respondents Rosanne Buckner, a judge of the Pierce County Superior Court, and John Krilich, a court commissioner thereof. Petitioners pray for an order requiring respondents to permit them to proceed in forma pauperis and pro se with their domestic relations actions in Pierce County Superior Court. We grant the requested relief.

The question arises from a purported local superior court rule which provides:

Resolved that the Presiding Court Commissioner be and is hereby given the discretion to return ex parte matters received in the mail to the attorney requesting action asking the attorney to present the same personally accompanied by the court file.

---

[1] A third petitioner, Patricia Moseley, was released from Purdy Treatment Center for Women and her claims were dismissed prior to the hearing on this matter.

Resolution of Pierce County Superior Court Judges' meeting of May 9, 1984.

The parties are in agreement on the relevant facts.[2] Petitioner Whitney is incarcerated at Purdy Treatment Center for Women pursuant to a felony conviction. Her earliest possible release date, excluding possible eligibility for earlier work release, is November 1987.

Whitney alleges that she is married, that her husband lives in California, that she wishes to obtain a dissolution of her marriage, and that she is indigent and, therefore, unable to pay the requisite costs and fees to prosecute a dissolution action. On or about August 29, 1984, Whitney tendered by mail for filing in Pierce County Superior Court the following pleadings: a verified petition for dissolution of marriage, a motion and affidavit to proceed in forma pauperis, a motion and affidavit for service by certified mail, proposed orders on these motions, and an affidavit of nonmilitary service.

Approximately 2 weeks later, these documents were mailed back to Whitney with an attached note from Court Commissioner Krilich stating that it was "necessary to have an attorney handle this, Pierce County [is] not set up to handle persons incarcerated who file [in] forma pauperis and pro se."

Petitioner Jameyson is incarcerated at McNeil Island Correction Center pursuant to a felony conviction. His earliest possible release date, unless eligible for an earlier work release date, is August 1989.

Jameyson wishes to modify a dissolution decree entered by Pierce County Superior Court in 1981. Specifically, Jameyson seeks to have his child support obligations under this decree suspended until 6 months after his release. On or about May 4, 1984, he mailed to the Superior Court for

---

[2]The parties submitted an agreed statement of facts. Respondents also filed a statement of disputed facts and a motion for additional fact–finding. Because these disputed facts are unnecessary for resolution of this action, respondents' motion is denied.

filing the following: a petition for modification of decree of dissolution re: child support, a motion and affidavit for order to show cause, a motion and affidavit to proceed in forma pauperis, an order to show cause, and an affidavit of service.

A few weeks later these documents were mailed back to Jameyson. Attached was a notice stating: "Ex parte oiders must be presented in person by the moving party. Please do not send any more such requests through the mail. By order of the Pierce County Superior Court, Civil Presiding Department. Dated: May 15, 1984." Also attached was a note from then Commissioner Buckner which said: "your personal appearance required to obtain order to show cause and at hearing on order to show cause."

On July 3, 1984, Jameyson mailed to the Superior Court for filing a motion for transportation at state expense so that he could appear in person to present his previous request for an ex parte order. He also submitted a proposed order granting the motion, a document noting the case for the calendar docket, and an affidavit of service. On or about July 18, 1984, Jameyson received a letter from Buckner returning the documents which stated in part: "[t]here are technical problems with the procedure you have used, but more importantly this is a matter which may be able to be handled by an attorney representing you." The letter also suggested Jameyson contact Puget Sound Legal Assistance Foundation to see if it would handle the matter.

On May 24, 1985, petitioners brought this action in the nature of mandamus to compel respondents to accept their pro se domestic relations pleadings tendered by mail. They allege that respondents' actions denied them due process and equal protection of the law and violated their statutory right to proceed pro se. Because of our disposition of the case, we reach only the due process claim.

■ As a threshold procedural matter, respondents contend that this action should be dismissed because the remedy of mandamus sought by petitioners is inappropriate. We do not agree. Respondents returned petitioners' pro-

posed ex parte orders and other pleadings submitted by mail because of a local superior court requirement that such orders be presented in person. Petitioners brought this action to compel respondents to entertain their ex parte orders and exercise discretion thereon. Although mandamus will not lie to control exercise of discretion, it will lie to require that discretion be exercised. *Bullock v. Superior Court,* 84 Wn.2d 101, 103, 524 P.2d 385 (1974). Under these circumstances, and because petitioners lack any other means of obtaining relief, mandamus is an appropriate remedy in this case.

We turn now to the merits of the case.

 It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977). That right is founded in the due process clause of the Fourteenth Amendment and "assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell,* 418 U.S. 539, 579, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974). Consequently, a prisoner's due process right of access to the courts encompasses civil rights actions as well as habeas corpus suits. *Wolff,* at 578–79.

Petitioners seek access to Pierce County Superior Court for the purpose of obtaining a dissolution and for related matters. They contend that a prisoner's due process right of access to the courts includes the right to bring, *i.e.,* at least commence, such actions. We agree.

That an individual has a constitutional right of access to the courts for the purpose of dissolving the marital relationship was first recognized by the United States Supreme Court in *Boddie v. Connecticut,* 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971). In *Boddie,* indigent plaintiffs claimed that a state statute requiring the payment of filing fees and other costs as a prerequisite to instituting an action unconstitutionally restricted their right of access to the courts for the purpose of obtaining a divorce. The Supreme Court agreed. Recognizing the fundamental

importance of the marriage relationship and the concomitant state monopolization of the means for legally dissolving this relationship, the Court held that "a State may not, consistent with the obligations imposed on it by the Due Process Clause of the Fourteenth Amendment, pre–empt the right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for doing so." *Boddie,* at 383. In short, the government cannot prescribe an exclusive method of dealing with a fundamental relationship and then deny without due process access to the means it has established.

We have also recognized that access to the courts in a dissolution action is a fundamental right. *Bullock v. Superior Court, supra.* This right is not lost to prisoners merely because they are incarcerated. Although incarcerated prisoners necessarily lose many of the rights and privileges of ordinary citizens, among the rights retained is the right of access to the courts. *In re Young,* 95 Wn.2d 216, 622 P.2d 373 (1980); *Wolff v. McDonnell, supra* at 556. Accordingly, we hold that a prisoner's due process right of access to the courts includes the right to bring actions for dissolution of marriage and for related matters. Other courts which have considered the issue have so held. *See Hall v. Hall,* 128 Mich. App. 757, 341 N.W.2d 206 (1983); *Corpus v. Estelle,* 551 F.2d 68 (5th Cir. 1977); *Thompson v. Bond,* 421 F. Supp. 878 (W.D. Mo. 1976).

Having concluded that prisoners enjoy a constitutionally protected right of access to the courts for the purpose of obtaining a dissolution, we must determine next whether respondents' actions deprived petitioners of that right in violation of due process. In making this determination, we realize that a prisoner's right of access is not absolute. However, due process requires at a minimum that, absent a countervailing state interest of overriding significance, prisoners be afforded *meaningful* access to the courts. *See Bounds v. Smith, supra* at 823; *Boddie v. Connecticut, supra* at 377.

In this case, respondents' actions effectively denied peti-

tioners *any* access to the courts. Respondents refused to consider Whitney's ex parte motion and order to proceed in forma pauperis in her dissolution action and Jameyson's ex parte order to show cause regarding his action to modify his child support obligations, both of which were submitted by mail. The sole reason given for their refusal was that such ex parte matters must be presented in person by the moving party. Because petitioners, as indigent prisoners, were unable either to present their ex parte matters in person or to retain counsel to do so on their behalf, they were left with no alternative means of initiating their domestic relations actions. Thus, respondents' actions denied petitioners any meaningful access to the courts and, in the absence of sufficient justification for their actions, denied them due process.

Respondents contend that they were acting pursuant to a local superior court rule which gives the presiding court commissioner "the discretion to return ex parte matters received in the mail to the attorney requesting action asking the attorney to present the same personally accompanied by the court file." Resolution of Pierce County Superior Court Judges' meeting of May 9, 1984.[3] This rule, respondents contend, is necessary because of the financial and administrative burdens of processing ex parte orders tendered by mail. Respondents point out the large numbers of proposed ex parte orders received in the mail which are deficient, improper and otherwise unacceptable and the attendant problems caused by processing such orders. They also raise the potential difficulties with actions prosecuted pro se by incarcerated prisoners through the mails.

While these concerns may justify a rule giving court

---

[3]Although petitioners do not challenge the validity of this local rule adopted by Pierce County Superior Court, we note nonetheless that it is ineffective as such. CR 83(b) states that local rules promulgated by a superior court become effective only after they are filed with the state Administrator for the Courts. As of the date of oral argument in this case, no such filing had been made. Nonetheless, the validity vel non of the local rule does not alter the disposition of this case.

commissioners the *discretion* to return ex parte orders received in the mail and to require personal presentment of such orders, they are not sufficient to justify respondents' blanket refusal to accept any ex parte orders received in the mail from incarcerated prisoners. Although respondents contend that they exercised discretion based on the individual facts of each of petitioners' cases, the record indicates otherwise. For example, the only reason given by Commissioner Krilich for his refusal to consider Whitney's motion to proceed in forma pauperis was that "Pierce County [is] not set up to handle persons incarcerated who file [in] forma pauperis and pro se." And in Jameyson's case, his pleadings were returned by respondent Buckner with a notice attached which stated: "Ex parte orders must be presented in person by the moving party. Please do not send any more such requests through the mail. By Order of the Pierce County Superior Court, Civil Presiding Department. . . ." Exhibit 13. In neither of these cases have there been allegations that petitioners' actions were frivolous or otherwise not brought in good faith. In addition, petitioners' proposed ex parte orders and other pleadings appear to us to be competently drawn and reasonably complete. Rather than indicative of an exercise of judicial discretion, respondents' actions reflect instead a blanket nondiscretionary policy on the part of Pierce County Superior Court of not accepting any ex parte orders submitted by prisoners through the mails. Such a policy, as applied to indigent prisoners seeking dissolutions of their marriage and related matters, is constitutionally impermissible.

We recognize that a superior court has a legitimate interest in regulating civil practice in its courts so as to promote the efficient administration of justice, and in furtherance of this interest, it is empowered to promulgate local rules not inconsistent with the civil rules adopted by this court. *See* CR 83(a). Furthermore, we are not unmindful of the administrative burden and inconvenience which would result were we to require Pierce County Superior Court to entertain automatically pro se domestic relations

actions brought by indigent prisoners. While such factors may be considered in choosing the particular procedures used to provide indigent prisoners with meaningful access to the courts, "the cost of protecting a constitutional right cannot justify its total denial." *Bounds v. Smith,* 430 U.S. 817, 825, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977).

Accordingly, respondents shall exercise discretion in both of the cases here so as to assure petitioners meaningful access to the courts to prosecute their domestic relations actions. In petitioner Whitney's case, the court shall consider her motion to proceed in forma pauperis on the merits. If inability to pay the filing fee is sufficiently shown, then the fees shall be waived and the petition for dissolution filed. Similarly in petitioner Jameyson's case, his motion and order to show cause shall be considered on its merits, and if sufficient grounds exist, then respondents shall enter the order and set the matter for hearing.

In so holding, we do not require that respondents in all cases accept prisoners' pro se dissolution pleadings tendered by mail. Nor do we mean to suggest that prisoners have a constitutional right to personally appear in such actions. That issue is not before us on this appeal. We hold only that respondents must exercise their discretion on a case by case basis consistent with the dictates of due process so as to afford indigent prisoners a meaningful opportunity to prosecute their domestic relations actions.

PEARSON, C.J., and UTTER, DOLLIVER, DORE, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

GOODLOE, J. (dissenting)—The majority holds "a prisoner's due process right of access to the courts includes the right to bring actions for dissolution of marriage and for related matters." Majority opinion, at 866. Thus, they require Pierce County Superior Court to proceed with ex parte petitions mailed to the court by incarcerated prisoners even though the prisoners wish to bring them pro se and are personally unable to appear. I must dissent.

Civil actions brought by prisoners unrelated to their incarceration reasonably are and should be subject to limitation. *See* Special Project, *The Collateral Consequences of a Criminal Conviction,* 23 Vand. L. Rev. 929, 1018–27 (1970). "'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Smith v. Fairman,* 678 F.2d 52, 54 (7th Cir. 1982), *cert. denied,* 461 U.S. 907 (1983), quoting *Price v. Johnston,* 334 U.S. 266, 285, 92 L. Ed. 1356, 68 S. Ct. 1049 (1948). Accordingly, courts should have wide discretion to determine the extent to which they wish to make themselves available to prisoner civil litigation unrelated to incarceration. As stated in *Kirby v. Thomas,* 336 F.2d 462, 463 (6th Cir. 1964): "The enforcement of the regulation preventing the filing of ordinary civil actions by prisoners which do not relate to their personal liberty is a matter of prison discipline and is not in violation of any constitutional restriction." *See also Seybold v. Milwaukee Cy. Sheriff,* 276 F. Supp. 484, 486 (E.D. Wis. 1967); *Maurer v. Pitchess,* 530 F. Supp. 77, 81 (C.D. Cal. 1981).

The majority relies on cases which either (a) do not involve prisoners or incarcerated felons or (b) involve prisoners' actions which are related to their incarceration. Thus, in so relying, they fail to recognize that governmental needs warrant a certain amount of interference with the rights of incarcerated individuals.

The majority has interpreted *In re Young,* 95 Wn.2d 216, 220, 622 P.2d 373 (1980) and *Wolff v. McDonnell,* 418 U.S. 539, 579, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), to allow prisoners unhindered access to the courts to bring actions unrelated to their incarcerations. In *Young* and *Wolff* the actions which the prisoners wished to bring related to their incarceration; in contrast, the petitioners' cases involve matters unrelated to incarceration. I contend the majority's interpretation of *Young* and *Wolff* is too broad. A prisoner's access to the courts reasonably should be limited to a challenge to his or her conviction and to claims involving

deprivations of personal liberty. The majority's reading of *Boddie v. Connecticut,* 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971) and *Bullock v. Superior Court,* 84 Wn.2d 101, 103, 524 P.2d 385 (1974) likewise is too broad. *Boddie* and *Bullock* involved the right of indigents to have access to the courts in a dissolution action. These cases did not involve prison inmates. *Boddie* and *Bullock* held that the right to a dissolution of marriage, the means of which are controlled by the State, is not to be denied because of indigency. Clearly, indigents must not be denied their full panoply of rights because of their indigency; inmates, however, may be denied particular rights because of their incarceration.

Incarcerated prisoners are entitled to the process that is appropriate to the circumstances. Mutual accommodation between the needs of the institution and prisoners' right of access to the courts is necessary. I agree with the Pierce County Superior Court that the method of handling ex parte matters is of legitimate concern to courts. I contend that the taxpayer ought not be required to bear the expenses and burdens necessarily incurred to afford prisoners the opportunity to bring a civil action unrelated to incarceration.

The treatment the prisoners argue for is one of preference. Pierce County Superior Court requires all other pro se indigents to appear personally to present ex parte orders. The majority fails to recognize that the important distinction here is not indigency, but rather incarceration. This distinction is one of the prisoners' own making. Consequently, I do not believe that the Pierce County local Superior Court rule unreasonably infringes on the prisoners' constitutional rights.

I would not require Pierce County Superior Court to proceed with the prisoners' ex parte petitions which are received through the mail. At the present time the King County Superior Court is studying the burdensome problem of pro se litigation in civil matters, and one can easily imagine the difficulties if inmates throughout the state were

872

free to litigate from their cells. Additional rules of court would need to be adopted for additional in absentia proceedings. For the reasons stated, I dissent.