[No. 17572-0-II.   Division Two.   April 19, 1996.]

THE STATE OF WASHINGTON ex rel. CALVIN LEE TAYLOR, *Respondent,* v. ARGIE LEE DORSEY, *Appellant.*

*Patricia A. Pethick,* for appellant (appointed counsel for appeal).

*John W. Ladenburg,* Prosecuting Attorney, and *James B. Roche, Deputy,* for respondent.

HOUGHTON, A.C.J. — Argie Lee Dorsey appeals a superior court commissioner's order establishing parentage, which was entered while he was incarcerated, arguing that his right to due process was violated by his absence from the proceedings and that there was insufficient evidence to support the order of parentage and the calculation of costs and child support. Dorsey conceded paternity. The State conceded that the evidence was insufficient to determine the back child support. We affirm the finding of paternity. We reverse and remand for calculation of current and back child support, costs, and for determination of Dorsey's right to attend the proceedings.

## *FACTS AND PROCEDURAL HISTORY*

On November 4, 1992, the State filed a petition pursuant to RCW 26.26, to establish parentage on behalf of Calvin Lee Taylor (Calvin), born February 23, 1983, against Argie Lee Dorsey, alleged father, and Leala Yvette Taylor (Taylor), natural mother. Dorsey was personally served on October 20, 1992, at the McNeil Island Correction Center.

On November 6, 1992, Dorsey filed an answer, claiming to have no knowledge of the basis for the State's petition and requesting: (1) that the court order blood tests; (2) that the court allow him to proceed in forma pauperis and appoint counsel; and (3) that the court protect his rights as the indigent alleged father.

Two motions accompanied Dorsey's answer. First, Dorsey filed a motion and affidavit for removal and transport, requesting that he be transported to the Pierce County holding facility, at some uncertain future date, to argue and defend this action because the "action involves complex matters and issues far beyond this respondent[']s abilit[ie]s to comprehend and understand and argue

without counsel . . . .[and] is likely to fail unjustly unless he is able to be present to represent himself." Second, Dorsey filed a motion and declaration requesting his own blood test to determine paternity. The State admitted it received these documents.[1] The record contains no rulings on these motions.

On November 10, 1992, the State noted its own motion requesting blood tests for Dorsey, Taylor, and Calvin for hearing on December 10, 1992. On November 25, 1992, Dorsey filed a letter with the court clerk, enclosing his declaration in support of his motion for blood testing and a note for the December 10, 1992 motion docket. In this declaration, Dorsey claimed to have also filed a motion and affidavit to proceed at public expense. Again, these documents are not in the record.

Dorsey's declaration also mentioned his motion and affidavit for an order for temporary removal and transport. In this declaration, Dorsey renewed all of his prior motions and requested that they be set for hearing with the State's motion on December 10, 1992. Dorsey requested that the court issue orders: (1) permitting him to proceed at public expense and appointing counsel; (2) providing for his transport to all paternity hearings; and (3) requiring that the testing agencies provide proof of the chain of custody. The record contains no additional motions relating to these requests.

At the December 10, 1992 hearing, the court commissioner granted the State's motion for an order requiring blood tests. Only the State's attorney was present at the hearing. There is no indication in the record whether the commissioner considered any of Dorsey's motions.

On February 22, 1993, the State filed the affidavit of Dr. Jerome L. Gottschall of the Paternity Testing Laboratory of the Blood Center of Southeastern Wisconsin. The affidavit described the paternity blood tests run by the labo-

---

[1]The State also admitted receiving a motion to proceed in forma pauperis, which is not part of the record. The State asserts that Dorsey failed to note any of his motions for hearing.

ratory, attaching the test reports and concluding that there was a 99.95 percent probability of Dorsey's paternity. After reviewing Gottschall's results, Dorsey filed a declaration of parentage admitting having sexual intercourse with Taylor during the relevant time period. At the end of his declaration, Dorsey again stated that he filed a financial statement with his motion to proceed in forma pauperis; neither of these documents is in the record.

On the same day, Dorsey filed a motion for summary judgment on parentage, based upon the test results and a series of related documents, including: (1) a note for hearing on March 19, 1993;[2] (2) a new answer; (3) the paternity lab results; and (4) Dorsey's parenting plan. The record does not indicate whether these documents were served on the State. However, the State asserts that it appeared on March 19, 1993, and that the court struck the motion because Dorsey had admitted paternity. The record contains no information on this hearing.

On March 19, 1993, the State filed a notice of hearing on April 20, 1993, to determine the following issues: (1) child support; (2) adoption of residential plan/guardian ad litem report; and (3) entry of judgment for accrued child support, birth related expenses, blood test costs, service fees, expert witness fees, and guardian ad litem fees.

The hearing was held on April 27, 1993.[3] The court commissioner entered findings of fact and conclusions of law based upon the case record, the child support worksheets prepared by the prosecutor, and brief comments made by

---

[2]Based upon the information in the State's note for hearing, that paternity issues are only heard on Tuesday and Thursday, it appears that Dorsey set this motion on the wrong day.

[3]The State asserts that the hearing was re-noted for this date and Dorsey received notice of the change; however, this is not in the record. Further, while admitting receipt of Dorsey's motion for transport to the paternity proceedings, the State claims that Dorsey never contacted it in "by writing or telephone" to express his desire to appear at this proceeding. After the initial motion for transport on some unspecified day and the letter requesting the motion be noted, there is no other information in the record that Dorsey either (1) notified the court of the hearing date for which he would need transport once he received notice of the April 1993 hearing, or (2) filed a new motion for transport after reviewing the tests and conceding paternity.

the prosecutor.[4] The court found: (1) that both parents resided and were served in Washington; (2) that Calvin was conceived in Washington and born February 23, 1983; (3) that blood tests indicated a 99.95 percent probability of paternity, that Dorsey acknowledged paternity, and that Dorsey was Calvin's father; and (4) that according to child support worksheets, the statutory minimum payment for Dorsey was $25 per month. From these findings the court concluded: (1) that it had jurisdiction; (2) that Dorsey was Calvin's father; and (3) that Dorsey's residential time with Calvin should be reserved for later determination.

Based upon these findings and conclusions, the court entered a judgment and order determining parentage and granting other relief. In addition to restating the information in the findings and conclusions, the order states: (1) that Dorsey shall pay child support as set forth in the order of child support; and (2) that DSHS shall have judgment against Dorsey for $22,127 back support from December 1987 through April 1993, $294 for blood testing, $125 for attorney fees, totaling $22,546. Back support was calculated as $427 per month from December 1987 through February 1992, and $25 per month from March

---

[4]The VRP consists of the following single page:

THE COURT: State of Washington vs. Argie Dorsey.

MS. KADOSHIMA: Cause No. 92-5-01894-9. Is Leala Taylor present? Let the record reflect there is no response. Mr. Dorsey is incarcerated at McNeil.

I will hand forward to the Court the State's proposed Findings of Fact, Judgment and Order, Order of Child Support, and the financial worksheet. Mr. Dorsey signed a declaration of parentage dated March 1, 1993, and we are asking that the support be set at $25 a month.

THE COURT: How long has Mr. Dorsey been confined?

MS. KADOSHIMA: He's been confined since March of 1992.

THE COURT: This child was born on February 23, '83?

MS. KADOSHIMA: Yes, 1983.

THE COURT: I thought it was '93.

MS. KADOSHIMA: That would be a quick paternity action.

[The hearing concluded.]

1992 through April 1993 (due to Dorsey's incarceration in March 1992). The court also entered an order of current support, requiring Dorsey to incur $25 per month support debt while he remained incarcerated, which would be added to the judgment for back support.

Dorsey appeals.

## ANALYSIS

■ "The Uniform Parentage Act [UPA], RCW 26.26, provides that actions brought under the ct are civil actions governed by the rules of civil procedure." *State ex rel. Henderson v. Woods*, 72 Wn. App. 544, 549, 865 P.2d 33 (1994) (citing RCW 26.26.120(1)). Since the Legislature has characterized these actions as civil proceedings, the burden of proof is a preponderance of the evidence. *Henderson*, 72 Wn. App. at 549 (citing *State v. Howe*, 44 Wn. App. 559, 569, 723 P.2d 452, *review denied*, 107 Wn.2d 1014 (1986)).

Dorsey asks this court to determine whether due process mandates that an incarcerated, allegedly indigent[5] putative father is entitled to be present at paternity proceedings.

■■ Due Process mandates that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law . . ." U.S. Const. amend. 14, § 1. Due process is a flexible requirement, providing procedural protections based upon each particular situation. *State v. James*, 38 Wn. App. 264, 267, 686 P.2d 1097 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)), *review denied*, 103 Wn.2d 1004 (1984). The United States Supreme Court has held that persons required to settle disputes through the judicial process must be given a meaningful opportunity to be heard.

---

[5]On appeal, Dorsey does not claim a due process violation arising from failure to appoint counsel based on his indigency. We note that in Washington an indigent putative father is not always entitled to counsel in a state-initiated paternity proceeding. *State v. James*, 38 Wn. App. 264, 269, 686 P.2d 1097, *review denied*, 103 Wn.2d 1004 (1984).

*James*, 38 Wn. App. at 267 (citing *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971)).

In *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the Supreme Court set forth a three-part test to determine when the procedural safeguards of due process are necessary, examining:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*James*, 38 Wn. App. at 267 (quoting *Eldridge*, 424 U.S. at 335)). "[P]aternity proceedings are subject to the requirements of due process." *James*, 38 Wn. App. at 267 (citing *Little v. Streater*, 452 U.S. 1, 101 S. Ct. 2202, 68 L. Ed. 2d 627 (1981)).

▋ Prisoners have a due process right of access to the courts, including civil proceedings. *Whitney v. Buckner*, 107 Wn.2d 861, 865, 734 P.2d 485 (1987) (citing *Wolff v. McDonnell*, 418 U.S. 539, 578-79, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). However, this "right of access is not absolute." *Whitney*, 107 Wn.2d at 866. Due process requires only that "prisoners be afforded *meaningful* access to the courts." *Whitney*, 107 Wn.2d at 866 (emphasis in original). "Meaningful access" does not mean that prisoners have a constitutional right to personally appear in domestic relations actions. *Whitney*, 107 Wn.2d at 869. Pursuant to Washington's Uniform Paternity Act, RCW 26.26.090, Dorsey has the right to "an opportunity to be heard in a manner as the court may prescribe."

Dorsey has a due process interest in these paternity proceedings and has the right of access to the courts; however, these rights do not translate into an absolute right to personally attend these proceedings. Due process requires examining and weighing the competing interests

of the impact of the proceedings on Dorsey; the risk of erroneously depriving Dorsey of his rights; and the State's interest in the proceedings, including the potential burden of requiring transport.

In this case, Dorsey's motion for transport (without a specific hearing date) was noted for December 10, 1992, along with the State's motion for blood tests. The court granted the motion for blood testing, but failed to address Dorsey's motion for transport. Dorsey subsequently filed a declaration admitting paternity.

■ The record does not indicate whether Dorsey ever informed the court when he would need transport; nor is there any indication that Dorsey renewed the request after he admitted paternity, or when he was informed of the date of the final paternity hearing. However, this does not mean that the court can ignore Dorsey's request. The record indicates that the court was aware of Dorsey's request for transport; therefore, the court must weigh the competing interests and respond to Dorsey's request.

Using its discretion, the court should consider: (1) the costs and inconvenience of transporting a prisoner; (2) the potential security risk the inmate poses; (3) the substantiality of the matter at issue; (4) the need for an early determination of the issue; (5) the feasibility of delay until the prisoner is released; (6) the probability of success on the merits; (7) the integrity of the correctional system; and (8) the inmate's interest in presenting his testimony in person rather than by deposition. *See In re Darrow*, 32 Wn. App. 803, 808, 649 P.2d 858 (termination proceeding, deciding that an individual incarcerated out-of-state does not have the right to personally attend proceeding when adequately given the opportunity to be heard through counsel or deposition) (citing *In re F. H.*, 283 N.W.2d 202, 209-10 (N.D. 1979)), *review denied*, 98 Wn.2d 1008 (1982). After considering these factors, the court may refuse to grant the inmate's request for transport, but the court must, at a minimum, consider these factors. *See In re Allison*, 126 Ill. App. 3d 453, 467 N.E.2d 310 (1984) (dissolution and child

custody proceeding, holding that the court failed to exercise its discretion by not considering the above factors before refusing an inmate's request to be present); *see generally Little v. Little*, 616 So. 2d 1179 (Fla. Dist. Ct. App. 1993) (dissolution action, remanding where the court was unable to determine whether above factors considered because there was no transcript); *Mancino v. City of Lakewood*, 36 Ohio App. 3d 219, 523 N.E.2d 332 (1987) (suit to enforce attorney's lien, remanding where court did not rule on inmate's request to be present at proceeding). The court may also determine that an alternative means of participating, such as via deposition or telephone, satisfies Dorsey's due process right to be heard. *See Darrow*, 32 Wn. App. at 810 (appearance through counsel or deposition); *Cook v. Boyd*, 881 F. Supp. 171 (Pa. D. 1995) (appearance via telephone).

The court commissioner erred by ignoring Dorsey's requests to be present at the proceedings. At minimum, the court must weigh the competing interests set forth above to determine whether an incarcerated individual has the right to be present at a paternity proceeding. Accordingly, we reverse and remand for a determination of Dorsey's right to attend the proceedings.

Dorsey contends that there was not substantial evidence to support the current child support, back child support, or costs calculations. The UPA provides for assessment of current child support, back child support, and costs in determinations of parentage. RCW 26.26.130, 26.26.140.

The UPA provides for a minimum $25 per month payment for the support of each child unless the court finds reasons for deviation. *See* RCW 26.19.020; RCW 26.19.065(2). The court ordered Dorsey to pay $25 per month current support while he remained incarcerated, which would be added to the total back support due. However, prior to assessing any current child support, the court must first calculate the parents' monthly income. The record provides no information on either parent's monthly income, nor does it show any attempt to deter-

mine their monthly income. Therefore, we remand for a determination of each parent's monthly income prior to setting current child support.

At oral argument, the State conceded that there was no evidence in the record to support granting a back child support judgment of $22,127.

■ ■ Back support may be awarded in a paternity proceeding. *See State ex rel. O'Brien v. Cooperrider*, 76 Wn. App. 699, 704, 887 P.2d 408 (1994), *review denied*, 126 Wn.2d 1018 (1995). The actual expenses related to back support need not be proven, but are to be determined pursuant to RCW 26.19. *Cooperrider*, 76 Wn. App. at 704. As with current support, the court must first determine Dorsey's income before setting the back support, or applying any applicable deviation from the standard schedules. RCW 26.19.071, RCW 26.19.075(3).[6] An order for back support must be accompanied by written factual findings supported by the evidence, including any reason for deviation from the standard calculation. RCW 26.19.035(2).

After determining the combined monthly income, the basic child support obligation is "allocated between the parents based on each parent's share of the combined monthly net income." RCW 26.19.080(1). The State requires this allocation so that the primary support obligation for illegitimate children lies with the natural parents and not the taxpayers. *Linda D. v. Fritz C.*, 38 Wn. App. 288, 300, 687 P.2d 223, *review denied*, 102 Wn.2d 1024 (1984). Accordingly, we remand for recalculation of Dorsey's back support debt. On remand, the court must apply RCW 26.19 in determining the amount of back child support allocated to Dorsey.

The trial court also assessed Dorsey for the costs of the blood tests and the attorney fees. While a statutory at-

---

[6]Pursuant to RCW 26.19.071(6), the court may impute income when determining the basic support requirements for a parent who is voluntarily unemployed or underemployed, based upon the median income from census reports. The court cannot impute income for an unemployable parent. RCW 26.19.071(6). An incarcerated individual is not unemployed for purposes of imputing income. *See In re Blickenstaff*, 71 Wn. App. 489, 493-98, 859 P.2d 646 (1993).

torney fee is permitted, the record contains no evidence to support the blood test costs assessed against Dorsey. Thus, we also remand for recalculation of the costs.

We affirm the finding of paternity. We reverse and remand for recalculation of current child support, back child support, and costs. We also remand for a determination of Dorsey's right to attend the proceedings.

MORGAN, J., and WIGGINS, J. Pro Tem., concur.